[No. B182814. Second Dist., Div. Eight. Dec. 27, 2006.]

CRISTIN PEREZ et al., Plaintiffs and Appellants, v.
RICHARD ROE 1 et al., Defendants and Respondents.

## COUNSEL

Furtado, Jaspovice & Simons, Richard J. Simons; Law Offices of Joseph George, Joseph George, Sr.; Law Offices of Daniel U. Smith and Daniel U. Smith for Plaintiffs and Appellants.

Kiesel, Boucher & Larson, William L. Larson for Sandra Graves as Amicus Curiae on behalf of Plaintiffs and Appellants.

Neumiller & Beardslee, Paul N. Balestracci; McNamara, Dodge, Ney, Beatty, Slattery & Pfalzer and Thomas G. Beatty for Defendants and Respondents.

## OPINION

**RUBIN, J.**—Plaintiffs Cristin Perez and Daniel Howard appeal from the judgment dismissing their childhood sexual abuse complaint against the Roman Catholic Bishop of Stockton because the statute purporting to revive their previously dismissed complaints violated California's constitutional separation of powers doctrine. We affirm.

## FACTS AND PROCEDURAL HISTORY

Cristin Perez and Daniel Howard sued the Roman Catholic Bishop of Stockton in July 2003, alleging that they had been the victims of sexual abuse by one of its parish priests in the late 1970's and early 1980's, when they were both minors.[1] Howard and Perez had each sued the Bishop before, but their complaints were dismissed in 1994 and 1995, respectively, under the then applicable one-year statute of limitations. (Code Civ. Proc., § 340; *Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 385

---

[1] The Roman Catholic Bishop of Stockton (the Bishop) is a corporate entity. Perez and Howard (collectively, appellants) also sued Stephen E. Blaire, the individual who currently acts as the bishop, in his representative capacity. His name was included in the caption of the master complaint eventually adopted by appellants, but is not included in the allegations of that complaint. The Bishop contends that Blaire is not a proper defendant to this action because his individual culpability is not at issue. Appellants do not contest that point, and even though their prior lawsuits did not name Blaire, we deem those judgments operative as to him. Appellants also sued the priest whom they claim abused them, but he was not a party to the demurrers that led to this appeal, and is therefore not a party to the appeal.

[64 Cal.Rptr.2d 53] (*Tietge*).)[2] The judgment against Perez became final in February 1996 after the California Supreme Court denied her petition seeking review of an appellate court decision affirming the trial court's judgment. The judgment against Howard became final in June 1996 when his appeal from the trial court's order was dismissed.

In 1998, the Legislature expanded the limitations period for actions against entities that employed or supervised abusers until three years from the date the plaintiff discovers that psychological injury occurring after age 18 was due to childhood sex abuse, but no later than the plaintiff's 26th birthday. (§ 340.1, subd. (a)(2)–(3); *Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603, 610, fn. 4 [79 Cal.Rptr.2d 73].) Effective January 1, 2003, the Legislature removed the age 26 cutoff for claims based on a defendant's alleged failure to safeguard the plaintiff from a perpetrator's sexual abuse when the defendant knew or had reason to know the perpetrator had committed unlawful sexual conduct. After that time, the limitations period on those claims would expire three years from the plaintiff's discovery that adult-onset psychological injuries had been caused by acts of childhood sexual abuse. (§ 340.1, subds. (a), (b)(2).) As part of that amendment, the Legislature revived for a one-year period all actions that fell within subdivision (b)(2), but which were otherwise barred because the previous limitations period had expired. (§ 340.1, subd. (c).) The revival provision does not apply to actions "litigated to finality on the merits before January 1, 2003." However, "[t]ermination of a prior action on the basis of the statute of limitations does not constitute a claim that has been litigated to finality on the merits." (§ 340.1, subd. (d)(1).) Appellants' 2003 complaint alleged that their action fell under this provision. The Bishop demurred, contending that the Legislature's attempt to unravel a final judgment violated the separation of powers doctrine. (Cal. Const., art. III, § 3.) The trial court agreed, sustained the demurrer without leave to amend, and entered a judgment of dismissal for the Bishop. We hold that the trial court was correct, and affirm the judgment.[3]

---

[2] All further undesignated section references are to the Code of Civil Procedure.

[3] Appellants' complaint is one of many from throughout the state against various entities and individuals affiliated with the Catholic Church for childhood sexual abuse. Those cases have been coordinated in the Los Angeles County Superior Court and the Alameda County Superior Court. The Second District Court of Appeal has been designated as the intermediate appellate court for the coordinated cases. The Bay Area cases, including appellants', are known as *The Clergy Cases III*. (Cal. Rules of Court, rule 1550(c).)

*The Clergy Cases III* include: *The Roman Catholic Bishop of Oakland v. Superior Court (Thatcher)* (B179053); *The Roman Catholic Archbishop of San Francisco v. Superior Court (Kavanaugh)* (B181245); *John Doe 1 et al. v. The Roman Catholic Bishop of Oakland* (B181520); *Sarah W. v. Does 1 et al.* (B182149); *Allyn et al. v. The Catholic Diocese of Monterey* (B182469); *Perez et al. v. Richard Roe 1 et al.* (B182814); *Dutra v. Eagleson* (B183033); *Jane Doe 1 et al. v. James Roe 1* (B184048); *The Roman Catholic Bishop of San Francisco v. Superior Court (John Doe 16)* (B184213); *George Doe v. The Roman Catholic*

## STANDARD OF REVIEW

In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiff-appellant. Regardless of the label attached to the cause of action, we must examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745 [100 Cal.Rptr.2d 39].) The judgment will be affirmed if it is proper on any of the grounds raised in the demurrer, even if the court did not rely on those grounds. (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 989 [94 Cal.Rptr.2d 643].)

We will not, however, assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed. When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. (§ 430.30, subd. (a); *Black v. Department of Mental Health, supra*, 83 Cal.App.4th at p. 745.) We may take judicial notice of the records of a California court. (Evid. Code, § 452, subd. (d).) We must take judicial notice of the decisional and statutory law of California and the United States. (Evid. Code, § 451, subd. (a).)

## DISCUSSION

### 1. *The Separation of Powers Doctrine*

█ The California Constitution divides power equally among three branches of state government: the Legislature (Cal. Const., art. IV, § 1); the executive branch (Cal. Const., art. V, § 1); and the courts (Cal. Const., art. VI, § 1). Although there is a certain overlap and interdependence among the three branches, each is constitutionally vested with certain "core" or "essential" functions that the others may not perform. (*People v. Bunn* (2002) 27 Cal.4th 1, 14, 16 [115 Cal.Rptr.2d 192, 37 P.3d 380] (*Bunn*).) Protection of those core functions is guarded by the separation of powers doctrine and is embodied in

*Bishop of Stockton* (B185440); *Lopes v. De La Salle Institute* (B185910); *The Redemptorist Society of California, Inc. v. Superior Court (Marley)* (B186874); *James Doe et al. v. The Catholic Diocese of Monterey et al.* (B187648); *Dutra et al. v. Congregation of Holy Cross et al.* (B188393); *Oregon Province of the Society of Jesus v. Superior Court (Brooks)* (B189394); and *James Doe 1 et al. v. The Archbishop of San Francisco et al.* (B192531).

a constitutional provision, which states that one branch of state government may not exercise the powers belonging to another branch. (Cal. Const., art. III, § 3; *Bunn, supra*, at pp. 14, 16; *Mandel v. Myers* (1981) 29 Cal.3d 531, 539, fn. 4 [174 Cal.Rptr. 841, 629 P.2d 935] (*Mandel*).) The purpose of this doctrine is to prevent both the concentration of power in a single branch of government and overreaching by one branch against another. (*Bunn, supra*, at p. 16.)

■ A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy. A core function of the judiciary is to resolve specific controversies between parties. As part of that function, the courts interpret and apply existing laws such as statutes of limitation. (*Bunn, supra*, 27 Cal.4th at pp. 14–15 [concerning criminal law statutes of limitation].) Separation of powers principles compel the courts to carry out the legislative purpose of statutes and limit the courts' ability to rewrite statutes where drafting or constitutional problems appear. Those same principles also constrain legislative influence over judicial proceedings. When cases become final for separation of powers purposes, the Legislature may not interpret a statute or otherwise bind the courts with an after-the-fact declaration of legislative intent. While the Legislature may amend a statute and apply the changed law to pending and future cases, the amended statute may not readjudicate or otherwise disregard judgments that are already final. (*Id.* at pp. 16–17, citing *Mandel, supra*, 29 Cal.3d at p. 547.)

In *Bunn*, and its companion case *People v. King* (2002) 27 Cal.4th 29 [115 Cal.Rptr.2d 214, 37 P.3d 398] (*King*), the California Supreme Court announced a rule in the area of criminal law statutes of limitation that we hold is applicable here: If a criminal complaint is dismissed because the statute of limitations has run, and the Legislature later retroactively expands the statute of limitations before that ruling becomes final, then the new limitations period will apply. If the Legislature changes the limitations period after the time for appeal has expired or the ruling has completed its journey through the entire appellate process, however, the Legislature's attempt to revive the criminal action violates the separation of powers doctrine. Because *Bunn* and *King* were based in large measure on the United States Supreme Court's decision in *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211 [131 L.Ed.2d 328, 115 S.Ct. 1447] (*Plaut*), we will first describe *Plaut* before discussing in detail *Bunn* and *King*.

### 2. *Plaut v. Spendthrift Farm*

The plaintiffs in *Plaut* filed a fraud action in federal court based on alleged violations of federal securities laws. The action was filed in 1987 and alleged fraudulent acts that had taken place in 1983 and 1984. When the action was filed, federal courts were required to "borrow" the most analogous state statute of limitations from the jurisdiction where the action was pending. On June 20, 1991, however, the United States Supreme Court changed the controlling law and adopted a uniform federal limitations rule requiring that such actions be filed within one year of discovery of the violation or within three years of the violation. (*Lampf v. Gilbertson* (1991) 501 U.S. 350 [115 L.Ed.2d 321, 111 S.Ct. 2773] (*Lampf*).) Another decision issued the same day as *Lampf* made the *Lampf* ruling retroactive to all civil actions for securities fraud then pending. (*James B. Beam Distilling Co. v. Georgia* (1991) 501 U.S. 529 [115 L.Ed.2d 481, 111 S.Ct. 2439].) Based on these two decisions, the federal district court where the *Plaut* action had been filed dismissed that action under the new limitations period.

Congress responded by passing legislation designed to undo *Lampf*'s retroactive effect. (15 U.S.C. § 78aa-1.) The new legislation restored the pre-*Lampf* rule in two kinds of actions commenced before June 20, 1991, the date *Lampf* was filed: (1) cases still pending on June 19, 1991; and (2) cases that were dismissed as time-barred between June 20 and December 19, 1991, that were timely when filed. The new law allowed plaintiffs to seek reinstatement of dismissed actions within 60 days after that law took effect. The plaintiffs in *Plaut* moved to reinstate their action under the new law, but the district court refused, finding that the statute violated federal separation of powers principles. (U.S. Const., art. III, § 1.) A federal appeals court affirmed that ruling, as did the *Plaut* court.

The *Plaut* court began with an examination of the three distinct branches of the federal government—legislative, executive, and judicial—and the essential functions each is constitutionally empowered to perform. While Congress makes laws, a core function of the judiciary is to interpret statutes and decide individual cases arising under those statutes. (*Plaut, supra,* 514 U.S. at pp. 218–219, 221–222.) Noting the historical considerations that motivated the framers of the United States Constitution to impose a separation of powers limitation—to prevent the colonial practice by which state assemblies either functioned as equitable courts or provided appellate review

of trial court judgments—*Plaut* said the separation of powers doctrine was designed to avoid interference with final court judgments. (514 U.S. at pp. 219–225.)

The law at issue in *Plaut* was deemed retroactive legislation, which "prescribes what the law *was* at an earlier time, when the act whose effect is controlled by the legislation occurred . . . ." (*Plaut, supra*, 514 U.S. at p. 225, original italics.) "When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.' " (*Ibid.*, citing The Federalist No. 81 at p. 545.) Such legislation is a "clear violation of the separation-of-powers principle . . . ." (514 U.S. at p. 225.) Once a judgment becomes final, "Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." (*Id.* at p. 227, original italics.)

Only those judgments that represent the last word from the entire judicial system are final under *Plaut*. Because the judicial branch consists of a hierarchy of courts—from district courts and appellate courts to the Supreme Court itself—a judgment has no conclusive effect for separation of powers purposes until the time for appeal has passed, or an appeal has been pursued and the review process is completed. Therefore, separation of powers principles are not implicated, and a lower court decision has not been unconstitutionally altered, when a reviewing court applies a new retroactive statute to cases still pending on appeal. (*Plaut, supra*, 514 U.S. at pp. 226–227.)

Similarly, Congress may authorize or require the reinstatement of a dismissed action where the prior judgment becomes final for separation of powers purposes only after the new law takes effect. (*Plaut, supra*, 514 U.S. at p. 234.) That does not preclude statutes giving the trial courts discretion to reopen judgments procured through fraud, excusable neglect, and the like. "The relevant retroactivity, of course, consists not of the requirement that there be set aside a judgment that has been rendered *prior to its being set aside*—for example, a statute passed today which says that all default judgments rendered in the future may be reopened within 90 days after their entry. In that sense, *all* requirements to reopen are 'retroactive,' and the designation is superfluous. Nothing we say today precludes a law such as that. The finality that a court can pronounce is no more than what the law in existence at the time of judgment will permit it to pronounce. If the law then applicable says that the judgment may be reopened for certain reasons, that limitation is built into the judgment itself, and its finality is so conditioned. The present case, however, involves a judgment that Congress subjected to a reopening requirement which did not exist when the judgment was pronounced." (*Ibid.*, original italics.)

### 3. *The Bunn and King Decisions*

At issue in *Bunn* and *King* were statutory amendments reviving certain child molestation prosecutions that had been dismissed as time-barred by the then existing statute of limitations. (Pen. Code, § 803, subd. (g).) The new law not only revived time-barred cases that had never been prosecuted, it also applied to prosecutions that had been dismissed pursuant to the previous limitations period. Effective January 1, 1997, prosecutors were given until June 30, 1997, to refile such cases (the first refiling period). Another amendment took effect June 30, 1997, extending the first refiling period until 180 days after a final decision by the California or United States Supreme Court determining that retroactive application of the revival statute was constitutional (the second refiling period).[4]

Bunn and King were each charged with child molestation in 1995. Both demurred to the criminal complaints on statute of limitations grounds, contending that legislative attempts to revive the limitations period in 1994 were unconstitutional. The trial courts agreed and dismissed the cases. The appellate courts in both cases affirmed those orders. In *King*, the prosecution's petition for review to the California Supreme Court was dismissed April 24, 1997. The prosecution did not refile a complaint until July 2, 1997, three days after the second refiling period took effect. In *Bunn*, the petition for review was dismissed May 21, 1997, and the prosecution refiled under the first refiling period on the last possible day, June 30, 1997, then timely refiled under the second refiling period a short time later.

The refiling dates were the key to both decisions. Finding *Plaut* "persuasive for purposes of interpreting California's separation of powers clause," (*Bunn, supra*, 27 Cal.4th at p. 22), the Supreme Court held that Bunn's prosecution did not violate separation of powers principles because the statute of limitations had been amended while his appeal was pending, and the refiled prosecution occurred according to the terms of legislation that was in effect before the appellate process was completed. (*Id.* at pp. 26–27.) *Bunn* distinguished cases where a prior dismissal "was entered or finally upheld when [the first refiling period] was in effect . . . , but the reinstituted complaint complies only with a later version [the second refiling period,] which became effective after the prior dismissal was entered or finally upheld. In that circumstance, use of the later law constitutes an impermissible

---

[4] These provisions were later found to be unconstitutional ex post facto laws in *Stogner v. California* (2003) 539 U.S. 607 [156 L.Ed.2d 544, 123 S.Ct. 2446]. Ex post facto concerns do not apply to civil statutes of limitation, however, and the Legislature is free to retroactively increase their length. (*Roman Catholic Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1161–1162 [28 Cal.Rptr.3d 355].) As we discuss below, the separation of powers doctrine is violated when the Legislature does so as to actions that were decided and became final under the previous limitations period.

retroactive attack on a judgment constitutionally subject to reopening only under the earlier law." (*Id.* at p. 26.) Because that is what happened in *King,* the court in that case found retroactive application of the second refiling period to be in violation of the separation of powers doctrine. "The judgment in [the first case] became final in the separation of powers sense in April 1997, when this court dismissed review. At that time, the six-month [first refiling period] . . . was in effect. Indeed, because the [first refiling period] was operative until June 30, 1997, the People had more than two months to invoke it against defendant. However, it was not until July 2, 1997—a few days *after* the [first refiling period] expired and the [second refiling period] took effect—that charges were refiled and the instant prosecution began. [¶] . . . [T]he [second refiling period] cannot be retroactively applied in this case to allow the refiling of charges that had been dismissed, at both the trial and appellate levels, before the [second refiling period] became effective. It follows that the refiling at issue here was constitutionally invalid." (*King, supra,* 27 Cal.4th at p. 36, original italics.)

■ Both decisions were animated by the California Supreme Court's understanding of *Plaut* and its applicability to California's separation of powers doctrine. "Consistent with the California principles and authorities discussed above, *Plaut* properly preserves and balances the respective 'core functions' of the two branches. . . . On the one hand, *Plaut* recognizes the core judicial power to resolve 'specific controversies' . . . between parties by judgments that are 'final' under laws then extant . . . , and holds such final dispositions inviolate from legislative 'disregard' . . . . On the other hand, *Plaut* acknowledges the paramount legislative power to 'make' law by statute . . . , to apply new laws to all cases still pending at either the trial or the appellate level . . . , and to regulate, within reasonable limits, the practices and procedures by which judicial matters are to be resolved. . . . *When the finality of a judicial determination is limited or conditioned by the terms of a general statute already in effect when the determination is made, application of the statute according to its terms is but a " 'reasonable," ' and therefore permissible, legislative restriction upon the constitutional function of the judiciary; ' "it does not defeat or materially impair" " that function. . . .* Because we therefore conclude that *Plaut* . . . is in clear conformity with California law, we follow it here." (*Bunn, supra,* 27 Cal.4th at pp. 22–23, italics added, citations & fn. omitted.)[5]

---

[5] Among their several arguments, appellants contend *Bunn* and *King* are inapplicable because those decisions were concerned with the constitutional prohibition against ex post facto laws. Both decisions also discussed the separation of powers issue, and *Bunn* framed the question to be decided as "whether, and to what extent, the separation of powers clause of the California Constitution [citation] precludes application of such a refiling provision." (*Bunn, supra,* 27 Cal.4th at p. 5, fn. omitted.)

Appellants also contend *Plaut* is not controlling because California's separation of powers doctrine must be interpreted according to California law. Because the *Bunn* court held that

### 4. *The Legislature's Attempt at Reviving Child Molestation Tort Claims That Were Dismissed Under the Earlier Statute of Limitations Violates California's Constitutional Separation of Powers Doctrine*

When appellants' first actions were dismissed and the dismissals were upheld on appeal in the mid-1990's, the applicable limitations period for childhood sex abuse claims against entities like the Bishop was one year. (§ 340; *Tietge, supra,* 55 Cal.App.4th at p. 385.) In 1998, after appellants' first actions had become final, section 340.1 was amended to extend the limitations period to the earlier of age 26 or three years from the date the plaintiff discovered that psychological injuries occurring after age 18 were caused by the alleged childhood abuse. (*Mark K. v. Roman Catholic Archbishop, supra,* 67 Cal.App.4th at p. 610, fn. 4.) By that time, however, appellants' claims had long since been adjudicated as time-barred. In 2002, effective January 1, 2003, the Legislature amended section 340.1 to remove the age 26 cutoff and revive for a one-year period certain childhood sexual abuse claims against entities like the Bishop. (§ 340.1, subds. (b)(2), (c).) The revival period did not apply to actions that had been litigated to finality on the merits, but the Legislature declared that an action terminated solely because the previous statute of limitations had expired was not such an action. (§ 340.1, subd. (d).)[6] Thus, on its face, the statute revived appellants' claims.

---

*Plaut* is in conformity with California law, *Plaut* does help define the contours of our separation of powers jurisprudence. (*Bunn, supra,* 27 Cal.4th at pp. 22–23.)

[6] As appellants and amicus curiae point out, the Legislature is free to retroactively increase a civil statute of limitations. (See, e.g., *Lent v. Doe* (1995) 40 Cal.App.4th 1177 [47 Cal.Rptr.2d 389] [previous retroactive extension of section 340.1].) None of the decisions cited by appellants and amicus curiae involves retroactive application of a limitations period to revive actions that had been dismissed under an earlier, shorter statute of limitations, however, and therefore none applies here.

The same is true of the federal and California decisions that the Legislature relied on when considering the constitutionality of the 2003 revival period. The legislative history cites four decisions to show that other statutes reviving lapsed civil limitations periods had survived constitutional challenges: *Chase Securities Corp. v. Donaldson* (1945) 325 U.S. 304 [89 L.Ed. 1628, 65 S.Ct. 1137]; *Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049 [111 Cal.Rptr.2d 268]; *Lent v. Doe, supra,* 40 Cal.App.4th 1177; and *Liebig v. Superior Court* (1989) 209 Cal.App.3d 828 [257 Cal.Rptr. 574]. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1779 (2001–2002 Reg. Sess.) as amended May 2, 2002, pp. 7–8.) *Chase* involved a due process challenge to a statute of limitations that changed while a federal action was still pending. *Lent* concerned a due process challenge to an earlier amendment to section 340.1, and did not involve bringing a new action after a previous one had been dismissed under the former limitations period. *Liebig* merely adopted *Lent*'s reasoning in a factually similar setting. *Hellinger* affirmed that the revival under section 340.9 of certain Northridge darthquake claims that had been dismissed under an earlier statute of limitations (§ 340.9, subds. (a), (d)(1)) did not violate the defendant insurers' constitutional due process or contract impairment rights. None involved, or even mentioned, separation of powers. Nothing in the legislative history

When lined up with *Plaut*, *Bunn*, and *King*, this aspect of the revival statute is a round peg that easily slides into the corresponding round hole of separation of powers analysis established by those three decisions: Appellants' original actions were dismissed because the then existing statutory limitations period had expired. When those actions were dismissed, and throughout the time those dismissals were upheld on appeal, the statute of limitations did not change. It was not until approximately two years later that a new limitations period went into effect, and it would be another five years before the Legislature purported to revive claims such as these, which were dismissed pursuant to the earlier statute of limitations. Under *Plaut*, *Bunn*, and *King*, the Legislature's attempt to undo the finality of those earlier judgments violates the separation of powers doctrine.

Appellants and amicus curiae see this round peg as a square one, however, due to the res judicata effect of a defense judgment based solely on the statute of limitations. This argument is rooted in two statements in *Plaut*: that a judgment on statute of limitations grounds is on the merits under federal law (*Plaut, supra*, 514 U.S. at p. 228); and that it was permissible to reopen a judgment if, at the time it was rendered, a condition allowing reopening existed and was therefore built into the judgment. (*Id.* at p. 234.) California law holds that a civil judgment based solely on the statute of limitations is not on the merits and that if new facts may be pleaded to cure the defect, the prior judgment will not bar a new action. (See *Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1596–1597 [273 Cal.Rptr. 438] (*Koch*).) According to appellants and amicus curiae, this condition was therefore built into the earlier judgments against appellants, permitting the Legislature to do what the doctrine of res judicata already allowed: revive their actions by passing a law to that effect.[7] By contrast, they point to criminal law limitations periods, which are substantive instead of procedural defenses going to the trial court's jurisdiction. (See *People v. Williams* (1999) 21 Cal.4th 335, 339–340 [87 Cal.Rptr.2d 412, 981 P.2d 42].) Based on this, amicus curiae and appellants attempt to distinguish *Bunn* and *King* because they concerned a criminal limitations period.

■ This reasoning is flawed in several respects. First, the line of cases upon which appellants and amicus curiae rely is inapplicable. The primary authority cited is *Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47 [92 P.2d 804] (*Goddard*) (federal action dismissed after demurrers were sustained for technical pleading defects was not res judicata of action in

---

suggests that the issue ever appeared on the Legislature's constitutional issues radar screen, and it seems likely that the issue was simply overlooked.

[7] The doctrine of res judicata precludes parties from relitigating a cause of action that has been finally determined by a court acting with proper jurisdiction. (*Koch, supra*, 223 Cal.App.3d at p. 1595.)

California state court where state court complaint eliminated those defects). While a general demurrer may be on the merits, the *Goddard* court held that is not always so. If the pleading defects are "technical or formal" and can be corrected by a new pleading, the prior judgment will not have res judicata effect. (*Id.* at p. 52.) "This result has frequently been reached where the failure of the first complaint was in misconceiving the remedy, or framing the complaint on the wrong form of action. [Citations.]" (*Ibid.*)

Appellants also cite *Koch, supra*, 223 Cal.App.3d 1591, which was based on *Goddard*. The plaintiffs in *Koch* sued to rescind land purchase contracts, contending the sales violated state laws regulating housing subdivisions. The defendants moved for summary judgment under the four-year statute of limitations for rescission claims. (§ 337, subd. (3).) The plaintiffs sought leave to amend to state a claim for common law fraud based on their recent discovery of the alleged fraud, thereby curing the statute of limitations problem. The trial court refused, and granted summary judgment. One month later, the plaintiffs filed a new complaint for common law fraud, but a demurrer was later sustained without leave to amend on the ground that the earlier summary judgment was res judicata of the new fraud claim. Citing *Goddard* and other decisions, the *Koch* court held that the statute of limitations was a procedural defect that did not reach the merits of the earlier action. The second action was *"based on common law fraud which allegedly was discovered within the applicable limitations period.* Thus, the former judgment does not bar the present case." (*Koch, supra*, at p. 1597, italics added.)

▮ The inapplicability of these decisions to this case is readily apparent. *Goddard* did not discuss the statute of limitations at all. Neither *Goddard* nor *Koch* concerned the separation of powers doctrine or the Legislature's ability to revive an action after a judgment for the defendant was entered under the then existing statute of limitations, and that judgment was upheld through the appellate process.[8] *Koch* concerned a plaintiff's right to state a fraud claim based on newly discovered facts that complied with the then existing statute

---

[8] Appellants and amicus curiae also cite several other inapplicable decisions, only one of which dealt with a statute of limitations issue: *Mid-Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769 [41 Cal.Rptr.3d 833]. That decision held that section 340.9, reviving claims against earthquake insurers due to the 1994 Northridge earthquake except for those "litigated to finality," applied to claims dismissed under the earlier statute of limitations because they were not adjudicated on the merits. It involved only a question of statutory interpretation, and the court did not address the separation of powers doctrine, so it is not authority one way or the other on the subject. (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1076 [135 Cal.Rptr.2d 361, 70 P.3d 351].)

Other decisions cited by amicus curiae and appellants included: *Keidatz v. Albany* (1952) 39 Cal.2d 826 [249 P.2d 264] (judgment in first action for rescission due to fraud was based on laches and failure to rescind promptly, after plaintiff failed to amend, was not res judicata of new complaint properly alleging action for fraud damages); *Kanarek v. Bugliosi* (1980) 108

of limitations, after the trial court denied leave to amend the complaint in the original action to state such a claim. By allowing a second action under a different legal theory that was timely under an already existing statute of limitations, *Koch* conformed to *Plaut*, which held: "The finality that a court can pronounce is no more than what the law in existence at the time of the judgment will permit it to pronounce. If the law then applicable says that the judgment may be reopened for certain reasons, that limitation is built into the judgment itself, and its finality is so conditioned." (*Plaut, supra*, 514 U.S. at p. 234.) When the original judgments against appellants in this action were entered, there were no new facts or alternate statutes of limitations available to rescue their claims. Instead, to paraphrase *Plaut*, this case involves judgments that the Legislature subjected to a reopening device that did not exist when those judgments were pronounced. (*Ibid.*)

Furthermore, the notion of finality which appellants and amicus curiae find in *Plaut* and the *Goddard* line of cases is not so clear cut. When *Plaut* mentioned that dismissals based on the statute of limitations were deemed to be on the merits, it cited two authorities: Federal Rules of Civil Procedure, rule 41(b) (28 U.S.C.) (rule 41(b)) and *United States v. Oppenheimer* (1916) 242 U.S. 85 [61 L.Ed. 161, 37 S.Ct. 68] (*Oppenheimer*). (*Plaut, supra*, 514 U.S. at p. 228.) Rule 41(b) applies to involuntary dismissals for failure to comply with certain federal procedural rules. In *Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 506–509 [149 L.Ed.2d 32, 121 S.Ct. 1021], the United States Supreme Court held that in federal diversity actions governed by state law statutes of limitation, rule 41(b) does not have full claim preclusive effect, but instead does no more than prevent an action dismissed pursuant to that rule from being refiled within the same federal district court. *Oppenheimer* was a criminal law decision which held that concepts of res judicata were applicable to criminal prosecutions, with certain criminal law adjudications entitled to the same treatment as their civil law counterparts, meaning they were " 'final as to the matter so adjudicated upon . . . .' " (*Oppenheimer, supra*, at pp. 87–88, citation omitted.)

---

Cal.App.3d 327 [166 Cal.Rptr. 526] (defamation action based on hardcover edition of book dismissed after demurrer sustained on technical grounds related to pleading of special damages; judgment not res judicata of new complaint based on release of paperback edition, which gave rise to an entirely new cause of action); and *Lunsford v. Kosanke* (1956) 140 Cal.App.2d 623 [295 P.2d 432] (trial court judgment for defendant in breach of contract action not res judicata of new complaint when first judgment was based on pleading defects that led to ruling that plaintiffs could not introduce evidence to prove their claims). Those decisions and the others cited by amicus curiae and appellants involved neither statute of limitations nor separation of powers issues, and are therefore not authority for the issues before us. (*Rosen v. State Farm General Ins. Co., supra*, 30 Cal.4th at p. 1076.)

*Oppenheimer*'s version of res judicata does not differ from California law. While *Goddard* and *Koch* might allow a second action that either alleges new facts, an entirely new claim, or an alternative theory subject to a different limitations period, they do not purport to hold that a judgment based on the statute of limitations is not res judicata when no new facts or alternative theories are available. In fact, one of *Goddard*'s primary decisional antecedents holds just the opposite.

*Goddard* cited *Newhall v. Hatch* (1901) 134 Cal. 269 [66 P. 266] (*Newhall*) for the proposition that a prior judgment on a general demurrer will not bar a new action if the demurrer was based on technical pleading defects that can be amended. (*Goddard, supra*, 14 Cal.2d at p. 52.) The plaintiff in *Newhall* sued on a promissory note and deed of trust, but judgment for the defendant was entered after a demurrer was sustained on statute of limitations grounds. The plaintiff filed another action, alleging that the defendant had made a new promise to pay his debt three years after the original debt, bringing the new action within the statute of limitations. The defendants appealed after a judgment for the plaintiff in the second action, and the Supreme Court affirmed. The *Newhall* court held that the judgment in the first action adjudicated only the facts alleged in that complaint, while the second action premised the plaintiff's right to recovery upon a new, later promise to pay that was not at issue in the first action. Only those facts actually determined as part of an earlier judgment will bar a later action based on the same facts, the *Newhall* court held. (*Newhall, supra*, at p. 272.) In short, the first judgment was res judicata of the statute of limitations issue raised by the first action, but not of those raised in the second. (See *McClain v. Rush* (1989) 216 Cal.App.3d 18, 29–30 [264 Cal.Rptr. 563] [in land purchaser's fraud action against realtors and sellers, separate summary judgment for realtors on statute of limitations was conclusive in sellers' summary judgment motion; time for plaintiff to amend complaint to allege facts tolling the limitations period had passed]; accord, *MIB, Inc. v. Superior Court* (1980) 106 Cal.App.3d 228, 232–235 [164 Cal.Rptr. 828] [even though dismissals based on lack of personal jurisdiction in three earlier proceedings were not on the merits, they were res judicata of that particular issue in a fourth action where essentially the same jurisdictional facts were alleged].)

Ultimately, appellants' and amicus curiae's bid to bring this case within *Plaut*'s "built into the judgment" exception through *Goddard* and *Koch* fails because it conflates finality for res judicata purposes with finality for separation of powers purposes. (See *Sullivan v. Delta Air Lines, Inc.* (1997) 15

Cal.4th 288, 303–304 [63 Cal.Rptr.2d 74, 935 P.2d 781] [finality of a judgment for one purpose does not necessarily equate with finality for some other purpose, and depends on the context in which it is being considered].)

*Bunn* and *King* (and *Plaut*) never mention res judicata when discussing the issue of finality. Instead, both decisions speak of finality " 'for separation of powers purposes.' " (*King, supra,* 27 Cal.4th at p. 35; see *Bunn, supra,* 27 Cal.4th at pp. 17, 20, 21, 25.) In fact, *Bunn* read *Plaut* to mean that whether the prior judgment was on the merits had nothing to do with the separation of powers issue. The *Bunn* court rejected the defendant's notion that the criminal limitations period revival provision at issue in that case had anything to do with the merits of earlier dismissed prosecutions, concluding that "*Plaut* itself casts doubt on whether the effect of a refiling statute on the 'merits' of judicial determinations is a critical, or even relevant, separation of powers concern. *Plaut* seems to establish a bright-line rule that considers only whether statutory limitations on *finality* were, or were not, in existence when the judgment otherwise achieved conclusive effect. [Citation.]" (*Bunn, supra,* at p. 25, fn. 15.)

We read *Plaut* the same way. The primary evil identified in *Plaut* was undoing a judgment that had made its way unaltered through the appellate process, only to have Congress step in some time later and reverse that very judgment by declaring retroactively what the law "was" when the judgment was entered. (*Plaut, supra,* 514 U.S. at p. 225.) Because individual courts are part of a judicial hierarchy, *Plaut* distinguished between cases still pending on appeal, which were subject to new, retroactive legislation, and cases that had been "finally adjudicated." (*Id.* at pp. 226–227.) Once final, "a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." (*Id.* at p. 227, original italics.) When taken as a whole, this passage defines finality for separation of powers purposes as the point at which the last court within a judicial system rules on a case. Once that occurs, a legislative body may not revive that very judgment by amending the statute of limitations.

*Bunn* and *King* are in accord: "Separation of powers principles do not preclude the Legislature from amending a statute and applying the change to both pending and future cases, though any such law cannot 'readjudicat[e]' or otherwise 'disregard' judgments that are already 'final.' [Citations.]" (*Bunn, supra,* 27 Cal.4th at p. 17.) As support for this last proposition, *Bunn* cited

*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1008 [90 Cal.Rptr.2d 236, 987 P.2d 705], as "indicating that *judgments do not become final for separation of powers purposes until both the trial and appellate process is complete, and the case is no longer pending in the courts.*" (*Bunn, supra*, at p. 17, italics added.) *Hunt*, in turn, cited *Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1207 [27 Cal.Rptr.2d 783], which held that a judgment is not final for separation of powers purposes while pending on appeal. (*Hunt, supra*, 21 Cal.4th at p. 1008.) The *King* court held that the judgment dismissing the prosecution in that case "became final in the separation of powers sense in April 1997, when this court dismissed review." (*King, supra*, 27 Cal.4th at p. 36.)    By contrast, the *Bunn* court held, "a judgment is not *final for separation of powers purposes*, and reopening of the case can occur, under the specific terms of refiling legislation already in effect when *the judicial branch completed its review and ultimately decided the case.*" (*Bunn, supra*, at p. 25, italics added.)

It is on this basis that we hold the Legislature violated the separation of powers doctrine when it amended section 340.1 to revive childhood sex abuse actions where a final judgment had been entered under the statute of limitations that previously existed. Once the judgments against appellants in the previous action were upheld on appeal—for Perez when the California Supreme Court denied her petition for review, and for Howard when his appeal was dismissed—they became final for separation of powers purposes and could not be legislatively revived. Because the power to conclusively resolve cases by rendering dispositive judgments rests with the judiciary alone (*Plaut, supra*, 514 U.S. at pp. 218–219), the Legislature may not reverse final judgments such as those that were rendered under the previous limitations period of section 340.1.

Although this issue may appear to be little more than a struggle between competing branches of government, waged on the turf of abstract and desiccated legal principles, it is ultimately about the competing rights of individual parties. We recognize the apparent anomaly of allowing the revival of claims for plaintiffs who never bothered to file a complaint before the revival period took effect, while punishing those plaintiffs who displayed more diligence by at least trying to sue earlier, albeit after the then existing limitations period had expired. On the other hand, there are the defendants who years ago obtained favorable judgments based on the law as it then existed, likely incurring substantial attorney's fees in order to do so. Relying on what appeared to be a final judgment, they might have felt free years later to discard favorable evidence and might as well have lost track of key witnesses.

As the *Plaut* court noted, similar concerns motivated the framers to include a separation of powers clause in the federal Constitution. (*Plaut, supra,* 514 U.S. at pp. 220–222.) One historical source noted by *Plaut* was the "Address of the Council of Censors to the Freemen of the State of Vermont," a 1786 report concerning conduct by that state's legislature. Decrying instances where judgments were " 'vacated by legislative acts,' " the council complained that those actions were " 'an imposition on the suitor, to give him the trouble of obtaining, after several expensive trials, a final judgment agreeably to the known established laws of the land . . . .' " (*Plaut, supra,* at p. 220, quoting Vermont State Papers 1779–1786, pp. 531, 533 (Slade ed. 1823).) Elsewhere, *Plaut* cited a Vermont decision which held that a statute allowing a party to appeal an adverse judgment after the time for appeal had expired violated the Vermont Constitution's separation of powers doctrine. (*Plaut, supra,* at p. 224, citing *Bates v. Kimball* (Vt. 1824) 2 D.Chip. 77 (*Bates*).) *Plaut* quoted portions of *Bates* which held that attempts by a legislature to " 'annul an existing judgment between party and party' " were a forbidden " 'assumption of Judicial power . . . .' " (*Plaut, supra,* at p. 224, quoting *Bates, supra,* at pp. 83, 90.)

■ Allowing the Legislature to assume such power simply because a judgment on statute of limitations grounds was not on the merits could have far reaching consequences. Although the Legislature was guided by understandable intentions in this case—recognizing the need for an extended and revived limitations period due to the delayed discovery of harm that is inherent in childhood sexual abuse—the separation of powers doctrine "is violated when an individual final judgment is legislatively rescinded for even the *very best* of reasons, such as the legislature's genuine conviction (supported by all the law professors in the land) that the judgment was wrong; and it is violated 40 times over when 40 final judgments are legislatively dissolved." (*Plaut, supra,* 514 U.S. at p. 228, original italics.) While it might seem a far-fetched notion, if the Legislature has the power to undo the class of judgments covered by section 340.1, subdivision (c), then it would also be free to revive any cause of action, no matter how old, that had been dismissed under a previously existing statute of limitations. The Constitution does not permit such an extension of legislative power.[9]

---

[9] Granting the Legislature such power because judgments were not rendered on the merits would also extend that power beyond cases decided on statute of limitations grounds. For example, judgments entered when an action is dismissed for a delay in prosecution (§ 583.420, subd. (a)(2)(A)) are procedural, and are not on the merits. (*Gonsalves v. Bank of America* (1940) 16 Cal.2d 169, 172–173 [105 P.2d 118].) The same is true of judgments entered when a demurrer is sustained with leave to amend on the ground of uncertainty, but the plaintiff does not file an amended complaint. (*Goddard, supra,* 14 Cal.2d at p. 53.)

## DISPOSITION

For the reasons set forth above, the judgment in favor of the Bishop against appellants Howard and Perez is affirmed. Respondent to recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.

On January 26, 2007, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied April 11, 2007, S150039. George, C. J., did not participate therein. Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.