Filed 5/25/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DANIJA MCKNEELY,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>     Real Party in Interest. | A166307<br><br>(Contra Costa County<br>Super. Ct. Nos. 1-194029-5;<br>1-195489-0; 1-195774-5;<br>4-196306-5) |

If a defendant is found incompetent to stand trial and committed to the Department of State Hospitals (DSH) for restoration to mental competence under Penal Code section 1370,[1] the medical director of the DSH facility is required to make periodic reports to the committing court concerning the defendant's progress toward recovery. (§ 1370, subd. (b)(1).) If the director concludes that a defendant's competence has been restored, the director must file with the court a certificate of restoration to competence (certificate) and the defendant is returned to the committing court. (§ 1372, subd. (a).) The court must then make a finding as to whether the defendant has recovered competence, and may hold a hearing on that issue. (§ 1372, subd. (c)(1).)

---

[1] All statutory references are to the Penal Code.

In 2022, the Legislature added a new provision to the statute governing court proceedings subsequent to the filing of a certificate. The new provision requires that "[i]f the court rejects a certificate of restoration, the court shall base its rejection on a written report of an evaluation, conducted by a licensed psychologist or psychiatrist, that the defendant is not competent." (§ 1372, subd. (c)(2) (section 1372(c)(2)); Stats. 2022, ch. 47, § 45, effective June 30, 2022.) The new provision goes on to state that "[t]he evaluation shall be conducted after the certificate of restoration is filed with the committing court and in compliance with Section 1369." (*Ibid.*)

This petition for extraordinary relief challenges the constitutionality of newly enacted section 1372(c)(2).

Petitioner Danija McKneely was found incompetent to stand trial and ordered committed to DSH. Subsequently, DSH filed a certificate of restoration to competency with the committing court, supported by a 16-page psychologist's report. McKneely's trial counsel urged the trial court to reject the certificate on the basis of counsel's own declaration that she believed her client was not competent, and asserted that section 1372(c)(2)'s requirement of the appointment of an expert violated separation of powers principles and due process. The trial court concluded that it lacked statutory authority to reject the certificate based solely on a declaration from defense counsel, and was prepared to authorize the appointment of an expert doctor in advance of a hearing on whether McKneely was restored to competency. McKneely asked the trial court to stay the appointment of a doctor, and this writ petition was filed.

McKneely argues that by "dictat[ing] the form of proof" required to reject a certificate of restoration, the Legislature "usurps the judiciary's role" and therefore violates the separation of powers. He also argues that the

amendment violates due process and that it is contrary to public policy. We are not persuaded by these arguments and deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Actions*

McKneely is a defendant in four criminal actions pending in Contra Costa County Superior Court.

In February 2020, he was convicted of battery and resisting a peace officer, and was placed on misdemeanor probation. (Docket No. 4-196306-5.)

In July 2020, while on probation, McKneely was charged with felonious assault by means likely to cause great bodily injury and misdemeanor battery. (Docket No. 1-194029-5.) Shortly thereafter, the court declared a doubt as to McKneely's competence to stand trial under section 1368 and suspended criminal proceedings. The court found McKneely incompetent to stand trial and ordered McKneely committed to DSH.

In March 2021, while awaiting transfer to DSH, McKneely was charged with five felony counts of vandalism, based on five incidents from October 2020 through January 2021 in which he allegedly damaged jail property belonging to the sheriff's office. (Docket No. 1-195489-0.) The court declared a doubt under section 1368, suspended criminal proceedings, and added docket Nos. 4-196306-5 and 1-195489-0 to the commitment order in docket No. 1-194029-5.

Later in March, McKneely was charged with three more felony counts of vandalism at the county jail. (Docket No. 1-195774-5.) At his arraignment in April 2021, the court again declared a doubt, suspended criminal proceedings, and ordered McKneely committed to DSH.

In May 2021, McKneely was admitted to Napa State Hospital.

3

*Certification of Restoration to Competency*

On June 23, 2022, DSH issued a certificate that McKneely had regained mental competence, supported by a comprehensive 16-page report prepared by Victoria Knudsen, PhD, a senior forensic psychologist. Knudsen's report was based on the charging documents, police reports, court-ordered evaluations, nursing and physician notes in McKneely's medical chart, consultation with members of McKneely's treatment team, and a competency evaluation that Knudsen conducted during an interview with McKneely two days earlier on June 21, 2022.

After McKneely was returned to court (§ 1372, subd. (a)(3)), his attorney filed an "Objection to Competing Expert Requirement as Condition to Reject Restoration Certificate," arguing that the recent amendment of section 1372 was invalid on constitutional grounds, and that a further expert declaration should not be required if McKneely could present a sufficiently detailed declaration from his attorney. The objection was accompanied by his counsel's declaration "setting forth the basis for her good faith belief that [McKneely] was not competent to stand trial."

In response, the district attorney argued that in light of the amendment, the court could not reject the restoration certificate unless it obtained "a written report of an evaluation, conducted by a licensed psychologist or psychiatrist, that the defendant is not competent." (§ 1372(c)(2).) The district attorney suggested that if defense counsel disputed the certificate, counsel could either request that the court reappoint

4

the experts who previously evaluated McKneely, or retain counsel's own expert to render an opinion.[2]

At a hearing, the court concluded that the court could not reject a certificate based solely on defense counsel's declaration, because the amendment to section 1372 required a report from a mental health professional to support the rejection of a certificate. Although the trial court was prepared to issue an order appointing an expert to conduct a further evaluation, McKneely requested that it not do so and instead stay the proceedings to allow him to file a writ petition. The court continued the matter for 30 days; McKneely filed his petition; and we then issued an order to show cause.

## DISCUSSION

McKneely asks us to direct the trial court to set aside its order upholding the requirement that the rejection of a certificate of restoration be based on an expert evaluation, and to enter a new order that the requirement is unconstitutional.

A.    *Applicable Law and Standard of Review*

We start with first principles. "The constitutional right to due process of law prohibits the trial of a mentally incompetent criminal defendant. [Citations.] Due process principles further require trial courts to employ procedures to guard against the trial of an incompetent defendant. [Citations.] Under *Dusky v. United States* (1960) 362 U.S. 402 . . ., the

_____

[2] The district attorney stated that before the change in the law, the People would have stipulated that the declaration prepared by McKneely's counsel contained sufficient detail such that it could be submitted to the court for the court to "render a decision as to whether [McKneely] was not competent to stand trial when balanced against the contents of the 1372 report."

5

inquiry into a defendant's competency to proceed focuses on whether the defendant ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and . . . a rational as well as factual understanding of the proceedings against him." ' (*Id.* at p. 402 . . . .)" (*In re R.V.* (2015) 61 Cal.4th 181, 188 (*R.V.*).)

Sections 1367 through 1376 set forth procedures intended to prevent the trial of a defendant who, "as a result of a mental health disorder or developmental disability . . . is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in rational matter" (§ 1367, subd. (a)), and to restore a defendant to competency if possible. The statutory scheme is intended "to make sure (1) a mentally incompetent criminal defendant is not tried, and (2) the mentally incompetent defendant is confined for incompetency only for a period reasonable for his or her competence to be restored." (*In re Taitano* (2017) 13 Cal.App.5th 233, 252 (*Taitano*).)

Section 1372—the focus of this petition—sets out the procedure to be followed if the medical director of a state hospital determines that a defendant has regained mental competence. The director files a certificate of restoration with the court (§ 1372, subd. (a)(1)), the defendant is promptly returned to court for further proceedings (*id.*, subds. (a)(2) & (3)), and the trial court must determine whether to approve or reject the certificate of restoration. (*Id.,* subds. (c) & (d).) The court may hold a hearing on the defendant's competence after a certificate of restoration has been filed. (*Id.,* subd. (c)(1); see *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1480 (*Mixon*) [references to a hearing in section 1372 indicate a legislative intention that a hearing be afforded where defendant may challenge the certificate].)

6

A hearing on a certificate of restoration of competence under section 1372, subdivision (c), is a "special proceeding," conducted in accordance with procedures set forth in section 1369, except that in a hearing under section 1372, subdivision (c) the court is the finder of fact. (*Mixon, supra,* 225 Cal.App.3d at p. 1482; see Code Civ. Proc. §§ 20-23 [defining remedies, actions, and special proceedings].) The defendant is presumed competent unless proved incompetent by a preponderance of the evidence. (§ 1369, subd. (f).)

A hearing on a certificate of restoration of competence is a " ' "creature[] of statute and the court's jurisdiction in such proceedings is limited by statutory authority." ' " (*People v. Quiroz* (2016) 244 Cal.App.4th 1371, 1379 (*Quiroz*).) " ' "As special proceedings are created and authorized by statute, the jurisdiction over any special proceeding is limited by the terms and conditions of the statute under which it was authorized [citation], and . . . [t]he statutory procedure must be strictly followed." ' " (*Ibid.*)

As we have noted, section 1372(c)(2) provides, "If the court rejects a certificate of restoration, the court shall base its rejection on a written report of an evaluation, conducted by a licensed psychologist or psychiatrist, that the defendant is not competent. The evaluation shall be conducted after the certificate of restoration is filed with the committing court and in compliance with Section 1369."[3]

---

[3] The 2022 amendment of section 1372 added subdivision (c)(2). Previously, section 1372, subdivision (c) stated in its entirety: "When a defendant is returned to court with a certification that competence has been regained, the court shall notify either the community program director, the county mental health director, or the regional center director and the Director of Developmental Services, as appropriate, of the date of any hearing on the defendant's competence and whether or not the defendant was found

We apply the de novo standard of review in considering the constitutionality of a statute. (*People v. Luo* (2017) 16 Cal.App.5th 663, 680.) We presume that the statute is valid; we resolve any doubts in favor of constitutionality; and we uphold the statute "unless it is in clear and unquestionable conflict with the state or federal Constitutions." (*Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 122.) "A challenge to a statute's constitutionality must demonstrate that its provisions inevitably pose a total and fatal conflict with applicable constitutional prohibitions"; therefore, "if the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail." (*Ibid.*)

B. *Forfeiture*

McKneely's first argument is that the People have forfeited any arguments on the constitutionality of the amended statute because they did not make those arguments in the trial court in response to McKneely's objection. We may exercise our discretion to decide a pure question of law where the facts are undisputed, and we do so here. (See *Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 298 [exercising discretion to consider on appeal an issue not raised by defendants/respondents in the trial court].)

C. *Separation of Powers*

1. *Legal Principles*

"A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy. A core

---

by the court to have recovered competence." (Stats. 2021, ch. 143, § 345.) The language formerly in section 1372, subdivision (c), now appears in section 1372, subdivision (c)(1). (Stats. 2022, ch. 47, § 45.)

function of the judiciary is to resolve specific controversies between the parties. . . . Separation of powers principles compel the courts to carry out the legislative purpose of statutes . . . [and] constrain legislative influence over judicial proceedings." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 177.) Although " '[t]he power of the legislature to regulate criminal and civil proceedings and appeals is undisputed" the Legislature may not " 'defeat or materially impair' " the constitutional functions of the courts. (*Briggs v. Brown* (2017) 3 Cal.5th 808, 846 (*Briggs*).)

In *Briggs* our Supreme Court stated, "We have emphasized that '[t]he separation of powers limitation on the Legislature's power to regulate procedure is narrow. Chaos could ensure if courts were generally able to pick and choose which provisions of the Code of Civil Procedure to follow and which to disregard as infringing on their inherent powers. The same concern applies to the Evidence Code, which, after all, generally limits a court's ability to consider evidence. In most matters, the judicial branch must necessarily yield to the legislative power to enact statutes. [Citation.] Only if a legislative regulation truly defeats or *materially impairs* the courts' core functions . . . may a court declare it invalid.' [Citations.] [These observations] apply equally to the Penal Code's procedural provisions." (*Briggs, supra,* 3 Cal.4th at pp. 846-847.)

2.    *Analysis*

McKneely argues that the Legislature usurps the judiciary's role by requiring a court to base its rejection of a certificate that competence has been restored on an expert evaluation that the defendant is not competent. He relies on authority recognizing that courts have the power to reject unsound expert testimony regarding competency, even if there is no expert

9

testimony to the contrary (*R.V.*, *supra*, 61 Cal.4th at pp. 215-216);[4] and contends that by requiring the court to accept the certificate unless it receives a competing expert opinion, the statute "impair[s] the core judicial junction of resolving controversies." He further contends that on its face, the statute "requires courts to accept even restoration certificates that are wholly unsupported by facts or reason," thereby "impairing the core judicial function of resolving controversies."

The current version of section 1372, like the previous version, states that after receiving a certificate of restoration, the trial court must make a finding as to whether or not the defendant has recovered competence. (§ 1372, subd. (c)(1).) The addition of section 1372(c)(2) does not eliminate that requirement or impair the trial court's ability to make the required finding. Instead, the filing of a certificate of restoration gives rise to the presumption that competence has been recovered, consistent with the statutory presumption at a competency hearing under section 1369, subdivision (f), that the defendant is mentally competent. The presumption established by section 1372(c)(2) is not conclusive, because the court can still find that competence has not been recovered, so long as such a finding is supported by a subsequent evaluation by a licensed psychologist or

---

[4] *R.V.* concerned a challenge to the sufficiency of the evidence supporting the juvenile court's determination in a competency proceeding under Welfare and Institutions Code section 709 that a minor was competent to stand trial. (*R.V.*, *supra*, 61 Cal.4th at pp. 187-188, 198.) The evidence before the juvenile court in *R.V.* consisted of the court-appointed expert's report and testimony, and the materials on which the expert based his opinion that the minor was incompetent to stand trial. (*Id.* at p. 186.) Our Supreme Court viewed the evidence in the light most favorable to the juvenile court's determination of competency, and nevertheless concluded that the weight and character of the evidence was such that the juvenile court could not reasonably have rejected it. (*Ibid.*)

10

psychiatrist who concludes that the defendant is not competent. (§ 1372(c)(2).) Nothing in section 1372(c)(2) limits the court's authority to appoint such an expert, or even to appoint more than one. McKneely fails to show how the Legislature's establishment of a rebuttable presumption, in a proceeding that is a " ' "creature[ ] of statute" ' " (*Quiroz, supra,* 244 Cal.App.4th at p. 1379), impairs the court's ability to resolve a dispute as to a defendant's competence or otherwise violates separation of powers principles.

McKneely also asserts that the amended statute requires a court to accept a certificate of restoration that is "wholly unsupported by facts or reason." It is not clear what McKneely has in mind here, because he does not contend that the 16-page report accompanying the certificate in his case is "wholly unsupported," and the trial court has yet to hold a hearing on whether McKneely has been restored to competency. As we noted, the director is required by statute to periodically report on the defendant's progress toward recovery of mental competence. (§ 1370, subd. (b)(1).) But even if we assume that a certificate of restoration might be filed without sufficient supporting documentation, the statute on its face does not require acceptance of the certificate. The statute only requires that the rejection of a certificate be based on an expert report supporting the finding that the defendant is incompetent. (§ 1372(c)(2).)

McKneely also contends that section 1372(c)(2) robs trial courts of the ability to assess lay testimony at a hearing contesting a certificate of restoration. We disagree. Nothing in the statute bars lay testimony, including testimony from defense counsel, at a hearing at which a certificate of restoration is contested. The statute only prevents the court from relying solely on non-expert testimony in rejecting a certificate.

11

D.    *Due Process*

McKneely makes two brief arguments that section 1372(c)(2) violates due process.

First, he claims that by requiring a further evaluation before a court can reject a certificate of restoration of competence, the amendment to section 1372 violates due process by creating an "unacceptably high risk" that a defendant will be tried while incompetent. We do not find this persuasive with respect to McKneely or as a general matter. Here, McKneely received 13 months of treatment from mental health professionals during his commitment at DSH before the director certified his competence. But in any case, the statute does *not* require the trial court to accept the certificate of restoration, nor does it prevent defense counsel from strenuously urging its rejection. A defendant still has the right to a hearing as to whether he has recovered competence, even after DSH has concluded that competence has been recovered. (§ 1372, subd. (c)(1).) And a defendant has the right to request a written evaluation by a psychologist or psychiatrist: indeed, the trial court here was about to order an evaluation until McKneely's counsel asked the court not to do so.

Moreover, even if the trial court accepts a certificate of restoration, and thereby finds that competence has been restored, that is not the end of the story. Nothing in section 1372(c)(2) prevents the court or defense counsel from subsequently declaring a doubt as to the defendant's competence to stand trial under section 1368. McKneely concedes this point, but contends that this is not enough to safeguard due process rights because, he says, "the standard for re-declaring a doubt is higher than that for initially doing so, in that it requires a substantial change of circumstances or new evidence." Yet McKneely is in no different situation from a defendant as to whom a doubt

12

was declared under section 1368 and who was found by a court or jury to be mentally competent under section 1369. Once a "defendant is found competent to stand trial, a trial court may rely on that finding unless the court ' "is presented with a substantial change of circumstances or with new evidence" casting a serious doubt on the validity of that finding.' " (*People v. Rodas* (2018) 6 Cal.5th 219, 231.) We fail to see how a defendant's rights are compromised by a rule that allows a finding of competence to stand absent a change of circumstances or new evidence.

McKneely's second argument is that the amended statute unconstitutionally prolongs the amount of time a defendant who is incompetent to stand trial is committed, because the appointment of an expert to contest the certificate and the production of a report "often takes months to complete." The argument is speculative. It also ignores the requirement that a defendant must be released once he has served the maximum term of commitment, which is two years.[5] (§ 1370, subd. (c)(1); see *Jackson v. Superior Court* (2017) 4 Cal.5th 96, 105 [maximum term of commitment in § 1370, subd. (c), "protect[s] defendants' due process and equal protection rights not to be committed solely because of incompetence for longer than is reasonable"]; see also *Taitano, supra*, 13 Cal.App.5th at p.

---

[5] There is conflicting authority as to whether the time after a certificate of restoration has been issued but before the trial court has accepted or rejected it counts toward the maximum commitment period. (See *Rodriguez v. Superior Court* (2021) 70 Cal.App.5th 628, 654, review granted Jan. 5, 2022, S272129 [commitment terminates upon *issuance* of certificate of restoration, so time after the certificate has been issued does not count toward the maximum commitment period]; *People v. Carr* (2021) 59 Cal.App.5th 1136, 1142-1143 [time between certification of restoration of competency and trial court determination as to competence under § 1372 counts toward the maximum commitment period].) This issue is not before us here.

252 [defendant who has served the maximum term of commitment must be released].)

E.    *Public Policy*

McKneely argues that as amended, section 1372 is contrary to public policy. He states that for years, the Department has experienced bed shortages that cause delays in transporting defendants to the state hospital; that "[c]ourts have routinely sanctioned [the Department] and ordered it to more timely place . . . defendants, to no avail." McKneely further contends that the amendment "creates a perverse incentive for [the Department] to issue 'sham' restoration certificates to free up beds for new placements and thereby avoid further litigation." He argues that the requirement to obtain a further evaluation before rejecting a certificate is expensive and burdensome, particularly in a case like his, where McKneely's counsel submitted a declaration that the parties would previously have agreed was sufficient evidence for the court to consider in determining whether to accept or reject the certificate. He argues that the requirement for further evaluations drains public funds, and requires drawing from an overburdened pool of court-appointed alienists. And he points out that the legislative history of Senate Bill No. 184, which amended section 1372, does not explain why an additional expert evaluation is now required before a certificate of restoration can be rejected.[6]

---

[6] The amendment to section 1372, subdivision (c), was enacted as part of an omnibus health trailer bill. (Senate Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 184 (2021-2022 Reg. Sess.) as amended June 29, 2022, pp. 1-31 [listing 222 numbered "statutory revisions affecting health programs necessary to implement the Budget Act of 2022"].) Neither the Legislative Counsel's Digest in Senate Bill No. 184, as enacted, nor the Senate Third Reading Analysis, nor Senate Rules Committee report, discuss the amendment to section 1372, subdivision (c).

14

The People respond that the Legislature has addressed concerns about a potential shortage of examiners by allowing the court to relax the statutory appointment guidelines if "there is no reasonably available expert."[7] (§ 1369, subd. (h)(2).) And the People point out that there are many considerations to be balanced in competency matters: "the right of a defendant not to remain in a treatment facility longer than the statutory maximum; the right of the defendant not to be tried if incompetent; the interest in prosecuting a competent individual for charged crimes; the state interest in public safety; and the appropriate division of responsibility between the treatment facility and the court, among others." (*Taitano*, *supra*, 13 Cal.App.5th at p. 256.)

In his petition, McKneely identifies policy considerations that might support a different approach from the one enacted by the Legislature in section 1372, subdivision (c). But "our role as a court is not to ' "sit in judgment of the Legislature's wisdom in balancing such competing public policies. [Citation.]" ' [Citation.] Instead, 'due respect for the power of the Legislature and for the separation of powers' requires us to 'follow the public policy choices actually discernible from the Legislature's statutory enactments.' " (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1113-1114.) In reviewing statutes enacted by the Legislature, it is not the function of the judiciary "to evaluate the wisdom of the policies embodied in such legislation;

---

[7] Section 1369, subdivision (h)(2), states: "When making an appointment pursuant to this section, the court shall appoint an expert who meets the guidelines established in accordance with this subdivision or an expert with equivalent experience and skills. If there is no reasonably available expert who meets the guidelines or who has equivalent experience and skills, the court may appoint an expert who does not meet the guidelines."

15

absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function." (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53.) McKneely has not shown that section 1372, subdivision (c), as amended, is unconstitutional, and it is not our role to invalidate the amendment based on McKneely's view of what constitutes wise public policy.

## DISPOSITION

The petition for writ of prohibition is denied. Our decision is final as to this court immediately. (Cal. Rules of Court, rule 8.490(b)(2)(A).

16

_____
Miller, J.


WE CONCUR:


_____
Stewart, P.J.


_____
Richman, J.


A166307, *McKneely v. Superior Court*

17

Court: Contra Costa County Superior Court

Trial Judge: Hon. Laurel Brady

Ellen McDonnell, Contra Costa County Public Defender; Lauren Askeland, Diana Garrido, Deputy Public Defenders, for Petitioner

No appearance by Respondent

Diana Becton, Contra Costa County District Attorney; Kristina McCosker, Caleb William Webster, Deputy District Attorneys, for Real Party in Interest

A166307, *McKneely v. Superior Court*