Filed 6/8/20

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072412 |
| v. | (Super.Ct.No. FWV11462) |
| GERRY JOHNS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Ingrid Adamson Uhler, Judge. Reversed with directions.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Jason Anderson, District Attorney and James R. Secord, Deputy District Attorney, for Plaintiff and Respondent.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Appellant.

1

Previously, an accused could be convicted of murder under the felony-murder rule or the natural and probable consequences doctrine of aider and abettor liability, even if the accused didn't kill or intend to kill the victim. The Legislature, exercising its authority to define substantive offenses, enacted Senate Bill 1437, which amended Penal Code sections 188 and 189 to require more. (Sen. Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (S.B. 1437).) Felony murder and aiding and abetting a murder remain crimes, but to be convicted of murder it isn't enough to participate in a felony that results in a death. Now, a person so accused must have killed the victim, aided the person who did kill the victim with the intent to kill them, or acted as a major participant in the felony with reckless indifference to human life.

S.B. 1437 also created a new petitioning procedure that allows offenders previously convicted under the felony-murder rule or the natural and probable consequences doctrine to have their murder convictions vacated if they couldn't be convicted of murder under the new law. (Pen. Code, § 1170.95, unlabeled statutory citations refer to this code.)

Appellant Gerry Johns claims to be such an offender. He suffered a murder conviction based on his aiding and abetting a 1981 robbery of four people in a car at a drive-through restaurant, during which a codefendant killed one of the victims with a shotgun. (*People v. Johns* (1983) 145 Cal.App.3d 281, 287, 295.) Johns filed a petition to vacate his murder conviction under Penal Code section 1170.95. The San Bernardino District Attorney's Office opposed the petition and moved to strike it, arguing S.B. 1437 is invalid as an unauthorized amendment of two voter-approved ballot initiatives,

Proposition 7 (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7 (Proposition 7)) and Proposition 115 (Ballot Pamp., Prim. Elec. (June 5, 1990) text of Prop. 115 (Proposition 115)). The trial court agreed, found S.B. 1437 unconstitutionally infringed on the prerogatives of the voters, and struck Johns' petition. Johns appeals, seeking reversal and remand for the trial court to review his petition on the merits.

We agree with Johns that S.B. 1437 is constitutional and he is entitled to have the trial court consider his petition. Proposition 7 addressed the punishment appropriate for murder, not the elements of the offense, and Proposition 115 added predicates for applying the felony-murder rule, which S.B. 1437 left intact. We therefore conclude S.B. 1437 addressed related but distinct areas of the law which the initiatives left in the power of the Legislature to amend. (*People v. Kelly* (2010) 47 Cal.4th 1008 (*Kelly*).) The new statutory provisions therefore did not amend either ballot initiative. We also conclude retroactive application of S.B. 1437 through the petitioning process doesn't violate the separation of powers doctrine or the Victims' Bill of Rights of 2008 (Marsy's Law), as the district attorney argues.[1]

We will therefore reverse the judgment of the trial court and remand the case for further proceedings called for by section 1170.95.

---

[1] The district attorney is the respondent in this case. The Attorney General submitted an amicus brief defending the constitutionality of S.B. 1437.

# I

# BACKGROUND

A. *Statutory Background*

    1. *Proposition 7*

Proposition 7, known as the Death Penalty Act, increased the penalties for offenders convicted of first and second degree murder. The voters approved those changes on November 7, 1978.

Before Proposition 7, Penal Code section 190 punished offenders convicted of first degree murder by "death, confinement in state prison for life without possibility of parole, or confinement in state prison for life" and second degree murder "by imprisonment in the state prison for five, six, or seven years."[2] (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) (1978 Ballot Pamphlet) text of Prop. 7, § 1, p. 33.) As the 1978 Ballot Pamphlet pointed out, at that time, a person who received the minimum sentence for first degree murder would be eligible for parole after serving only seven years, and, due to good behavior credits, a person sentenced to a mid-term six years for second degree murder could be eligible for parole after serving only four years. (*Id.*, Legis. Analyst, analysis of Prop. 7, p. 32.)

---

[2] We grant the district attorney's motion asking us to take judicial notice of the ballot pamphlets for Propositions 7 and 115 and certain legislative history related to S.B. 1437. (Evid. Code, §§ 450, 452, 453.) We need not take judicial notice of our prior opinion in Johns' case because it is published. (*People v. Johns* (1983) 145 Cal.App.3d 281, 287, 295.)

The initiative increased the penalties for both first and second degree murder. It amended Penal Code section 190 to increase the minimum sentence for first degree murder to a term of 25 years to life. (1978 Ballot Pamp., *supra*, Legis. Analyst, analysis of Prop. 7, p. 32; text of Prop. 7, § 1, p. 33.) It also increased the sentence for second degree murder in all cases to 15 years to life. (*Ibid.*; see also *People v. Cooper* (2002) 27 Cal.4th 38, 42.)

Not relevant here, other provisions of Proposition 7 addressed the imposition of the death penalty, including by expanding the list of special circumstances making an offense death-eligible and revising the law relating to mitigating or aggravating circumstances for death-eligible offenses. (1978 Ballot Pamp., *supra*, Legis. Analyst, analysis of Prop. 7, p. 32.) Penal Code section 190.1 set phases for death penalty cases. Penal Code section 190.2 set the special circumstances under which a person convicted of first degree murder could be punished by death or life without parole. Penal Code section 190.3 set the procedure for imposing the death penalty on offenders convicted of special-circumstance first degree murder. Penal Code section 190.4 set the procedure for determining whether a murder included a special circumstance. And Penal Code section 190.5 made offenders younger than 18 years old ineligible for the death penalty. (1978 Ballot Pamp., text of Prop. 7, §§ 4 at p. 33, 6 at p. 42, 8 at p. 43, 10 at p. 45, 12 at p. 46.)

Proposition 7 did not include a provision authorizing the Legislature to amend its provisions without voter approval. (See 1978 Ballot Pamp., *supra*, text of Prop. 7, §§ 1-12, pp. 33, 41-46; *People v. Cooper*, *supra*, 27 Cal.4th at p. 44.)

## 2. *Proposition 115*

Twelve years later, the voters passed Proposition 115, known as the Crime Victims Justice Reform Act, which amended the California Constitution to make several changes to procedures and rights applicable in criminal cases. (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990).)

The proposal indicated the amendment was a response to "decisions and statutes [that] have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth." (Ballot Pamp., Prim. Elec. (June 5, 1990) (1990 Ballot Pamphlet) text of Prop. 115, pp. 33, 65-69.) Among its core provisions, the initiative attempted to bar the courts from construing the California Constitution as affording to criminal defendants greater rights than the United States Constitution affords. However, the California Supreme Court concluded such a significant revision to the constitutional dispersal of government power must be passed at a constitutional convention or by initiative initially proposed by the Legislature. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336.)

The initiative also changed the rules regarding criminal discovery, prohibited post-indictment preliminary hearings, established the People's right to due process and speedy criminal trials, and allowed hearsay in preliminary hearings. (1990 Ballot Pamp., *supra*, text of Prop. 115, pp. 33, 65-69; see also *Raven v. Deukmejian*, *supra*, 52 Cal.3d at p. 342 [summarizing Proposition 115].)

6

Relevant to this case, the initiative amended Penal Code sections 189 and 190.2. Previously, Penal Code section 189 defined as first degree murder any killing "committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288 [lewd and lascivious conduct]." The initiative expanded its definition of first degree murder by adding killings that occurred during the commission of kidnapping, train wrecking, and various additional sex offenses. (1990 Ballot Pamp., *supra*, text of Prop. 115, § 9, p. 66.) The initiative amended Penal Code section 190.2 to require a sentence of death or life without the possibility of parole in two situations where the offender isn't the actual killer—when they aid or support a killer and act with the intent to kill and when they are a major participant in certain crimes (like robbery) where a death occurs, and act with reckless indifference to human life. (1990 Ballot Pamp., *supra*, text of Prop. 115, § 10, p. 66.)

Proposition 115 permitted the Legislature to amend its terms by a two-thirds vote in each house of the Legislature. (1990 Ballot Pamp., *supra*, text of Prop. 115, § 30, p. 69.)

### 3. *S.B. 1437*

Generally, malice is an essential element of the crime of murder. (§ 187.) Malice may be either express or implied. It is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Id*. at subd. (a)(2).) Implied malice

7

has "both a physical and a mental component. The physical component is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.' . . . The mental component is the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.'" (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

Before S.B. 1437, the felony-murder rule and the natural and probable consequences doctrine were exceptions to the actual malice requirement. The felony-murder rule made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*People v. Chun*, *supra*, 45 Cal.4th at p. 1182.) First degree felony murder was "a killing during the course of a felony specified in [Penal Code] section 189, such as rape, burglary, or robbery." (*Ibid.*) Second degree felony murder was "an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in [Penal Code] section 189." (*Ibid.*) The natural and probable consequences doctrine made "a person who aids and abets a confederate in the commission of a criminal act . . . liable not only for that crime (the target crime), but also for any other offense (nontarget crime) [including murder] committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted." (*People v. Prettyman* (1996) 14 Cal.4th 248, 254, 262-263.) Because a nontarget murder "is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the

commission of the [murder]." (*People v. Chiu* (2014) 59 Cal.4th 155, 164.) For that reason, our Supreme Court held "punishment for second degree murder," rather than first degree murder, "is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine."[3] (*Id.* at p. 166.)

In 2018, the Legislature adopted, and the Governor signed, S.B. 1437. In an uncodified section of the law, the Legislature declared it found the "[r]eform is needed in California to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual." (*Id.* at § 1.) The new law was designed "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Ibid.*)

In effect, S.B. 1437 is a change to the substantive offense of first and second degree murder, removing the exceptions that had allowed such convictions despite the absence of malice. Effective January 1, 2019, S.B. 1437 made that change by amending Penal Code sections 188 and 189 to restrict the scope of first degree felony murder and eliminate second degree murder based on the natural and probable consequences doctrine. (S.B. 1437, §§ 2-3.) As amended, Penal Code section 188 directs malice may not "be imputed to a person based solely on his or her participation in a crime." (Pen.

---

[3] Though an offender may be convicted of first degree murder based on direct aiding and abetting principles or under the felony-murder rule. (*People v. Chiu*, *supra*, 59 Cal.4th at p. 167.)

9

Code, § 188, subd. (a)(3).) Instead, "to be convicted of murder, a principal in a crime shall act with malice," except for cases applying the narrowed felony murder rule in new subdivision (e) of Penal Code section 189, under which "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder *only if* one of the following is proven: [¶] (1) The person was the actual killer[;] [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree[;] [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] section 190.2."[4] (Pen. Code, § 189, subd. (e), italics added.)

The Legislature also added section 1170.95 to the Penal Code. That provision creates a procedure for offenders previously convicted of felony murder or under a natural and probable consequences theory to obtain the benefits of these changes retrospectively. Such convicts may petition for relief in the court where they were convicted. If they make a prima facie showing they're entitled to have their prior convictions vacated, they're entitled to receive "a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been

---

[4] The limitations in subdivision (e) don't apply when the victim is a peace officer killed while in the course of their duties and where the defendant knew or reasonably should have known as much. (§ 189, subd. (f).)

10

sentenced." (§ 1170.95, subds. (c), (d)(1).) "If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (*Id*. at subd. (e).)

B. *Johns' Petition*

Johns suffered a murder conviction based on his aiding and abetting a 1981 robbery. He and a codefendant approached four young women waiting in a car at the drive-through window of a fast food restaurant. One of the men demanded money, someone reached into the car to take a wallet, then a shot fired by the codefendant killed one of the victims. (*People v. Johns*, *supra*, 145 Cal.App.3d at pp. 287, 295.)

A jury convicted Johns of robbery (§ 211) and murder (§ 187, subd. (a)) and found he was armed with a firearm during the offenses. On appeal, this court determined Johns had committed second degree murder, as required by section 1157, because the jury failed to determine the degree. (*People v. Johns*, *supra*, 145 Cal.App.3d at p. 295.)

On October 12, 2018, Johns filed a motion in the trial court seeking to take advantage of the petitioning procedure created by S.B. 1437 (Pen. Code, § 1170.95). The People filed a motion to strike the petition for resentencing on the ground that S.B. 1437 is unconstitutional because it amends voter-approved initiatives without following the required procedures for doing so.

C. *The Trial Court's Ruling*

On March 22, 2019, the trial court found Johns had stated a prima facie case for relief under Penal Code section 1170.95. However, the court did not grant Johns a hearing. Instead, it granted the People's motion to strike the petition on the ground the amendment was unconstitutional as an unauthorized amendment of both Proposition 7 and Proposition 115.

"[U]nder the rule of analysis employed by the California Supreme Court in *Kelly*, the Legislature was not free to enact SB 1437, except under the parameters of article II, section 10 for amending Proposition 7 or by the supermajority requirement of Proposition 115. This legislation was enacted by neither procedure and, hence, [is] invalid. . . . [¶] I hereby grant the motion to strike the petition for re-sentencing by declining to give enforcement to SB 1437."

Johns filed a timely notice of appeal.

## II

## DISCUSSION

A. *Legal Background*

The California Constitution protects the power of voters to act through the initiative process by limiting the Legislature's power to amend voter-approved statutes. (Cal. Const., art. II, § 10, subd. (c); *Kelly, supra*, 47 Cal.4th at p. 1025.) The Legislature may amend or repeal an initiative statute only with approval from the electorate, which approval may come in the form of a direction contained in the initiative itself. "The

12

Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c).)

Proposition 7 didn't include a provision allowing the Legislature to amend its provisions. Section 30 of Proposition 115 permits such amendments without voter approval, but only if approved by a two-thirds vote in each house of the Legislature. In this case, the question isn't whether the Legislature acted in a way that would comply with the requirements for amending the initiative statutes—all agree they didn't—but the analytically prior question whether S.B. 1437 amended those provisions in the first place. The trial court concluded S.B. 1437 did amend them, invalidating the enactment, and the district attorney defends that decision on appeal. Johns and the Attorney General argue S.B. 1437 did not amend the statutory provisions enacted through Propositions 7 and 115, and the trial court should have enforced the new law because "[t]he Legislature remains free to address '"a related but distinct area"' . . . or a matter that an initiative measure 'does not specifically authorize or prohibit.'" (*Kelly*, *supra*, 47 Cal.4th at pp. 1025-1026.)

A statute amends an initiative when it is "designed to change an existing initiative statute by adding or taking from it some particular provision." (*People v. Cooper*, *supra*, 27 Cal.4th at p. 44.) This doesn't mean "any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes." (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571.) Our Supreme Court has directed that "[i]n deciding whether [a] particular

13

provision amends [an initiative statute], we simply need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Ibid*.) As the Court explained, we should not invalidate a law enacted by the Legislature if it doesn't impinge on "what voters contemplated"—"[t]he voters should get what they enacted, not more and not less." (*Ibid*.)

The question is one of statutory interpretation. "When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*People v. Superior Court (Pearson)*, *supra*, 48 Cal.4th at p. 571.)

Our colleagues in the Fourth District, Division One recently gave the questions raised in this appeal comprehensive consideration in a pair of companion decisions. In *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270 (*Gooden*), the Court of Appeal applied the *Pearson* test and decided S.B. 1437 didn't amend Proposition 7, which "the electorate intended . . . to increase the punishments, or consequences, for persons who have been convicted of murder." (*Gooden*, at p. 282.) The court concluded S.B. 1437 "did not address the same subject matter. It did not prohibit what Proposition 7

14

authorizes by, for example, prohibiting a punishment of 25 years to life for first degree murder or 15 years to life for second degree murder. Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder. In short, it did not address punishment at all." (*Gooden*, at p. 282.)

In the same opinion, the court concluded S.B. 1437 didn't amend Proposition 115, which added offenses that could be predicates for applying the felony-murder rule. As the court pointed out, S.B. 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based, which is the pertinent subject matter of Proposition 115. . . . Instead, it amended the mental state necessary for a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287.)

The court reached the same conclusions in *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*), where it considered several additional arguments for finding the Penal Code section 1170.95 petitioning provision unconstitutional. The district attorney argued there, as they argue here, that allowing people already convicted of murder to petition to have their convictions vacated violates separation of powers principles by "impair[ing] a core function of the judiciary because it provides for the retroactive reopening of final judgments." (*Lamoureux*, at p. 252.)[5] They also argued S.B.

---

[5] In *Lamoureux*, the district attorney also argued allowing people already convicted of murder to petition to have their convictions vacated violates the separation of powers principles by usurping the executive's clemency power. The district attorney

*[footnote continued on next page]*

15

1437 violates victims' rights to finality of judgments and safety, as protected in Marsy's Law. The court rejected these challenges too, concluding the Legislature has the power to reopen final judgments in criminal cases for ameliorative purposes and doing so doesn't tread on the role of the judiciary or the rights protected under Marsy's Law. (*Lamoureux*, at pp. 262, 264-266.)

We have latitude to depart from the decisions of our sister Courts of Appeal, though we generally exercise our discretion only when supported by good reason. (*Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 35.) We see no good reason for departing from the decisions of the Fourth District, Division One on these issues. On the contrary, like every other court of appeal to consider the same question, we conclude their analysis is unimpeachable and join and adopt it. (*People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Solis* (2020) 46 Cal.App.5th 762; *People v. Cruz* (2020) 46 Cal.App.5th 740; *People v. Prado* (May 26, 2020, G058172) 2020 WL 2730876; *People v. Smith* (May 15, 2020, B298642) 2020 WL 2537482).)

B. *S.B. 1437 Did Not Amend Proposition 7*

Proposition 7 set the penalties for murder, not the elements of the crime of murder. (See Prop. 7, §§ 1-12.) S.B. 1437 left the punishment for murder unchanged, but altered

---

doesn't make that argument in this case. In any event, we don't find the argument persuasive. The Legislature was not acting to "extend 'an act of grace' to petitioners," as the executive does in granting clemency, but rather, "as part of a broad penal reform effort" meant to "ensure our state's murder laws 'fairly address[] the culpability of the individual and assist[] in the reduction of prison overcrowding.'" (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 255-256.)

the elements required to convict an accused of murder. (Pen. Code, §§ 188, subd. (a)(3) & 189, subd. (e).) Specifically, S.B. 1437 changed the minimum intent required to sustain a murder conviction by amending Penal Code sections 188 and 189. That change did not amend the statutory provisions enacted by the voters in passing Proposition 7. (See *People v. Banks* (2015) 61 Cal.4th 788, 801 ["'the definition of crimes generally has not been thought automatically to dictate what should be the proper penalty'"].) S.B. 1437 simply did not address any matter Proposition 7 specifically authorizes or prohibits. Since the Legislature isn't barred from passing laws in areas related to but distinct from those addressed in an initiative, Proposition 7 was no bar to their passing S.B. 1437. (*Kelly*, *supra*, 47 Cal.4th at pp. 1025-1026.)

The Proposition 7 ballot materials confirm the point. The initiative's primary focus was implementing the death penalty. (1978 Ballot Pamp., *supra*, argument in favor of Prop. 7, p. 34 [calling Proposition 7 "the nation's toughest, most effective death penalty law"].) Supporters invoked criminals who killed intentionally—specifically Charles Manson and the Zodiac Killer—to justify the change to the law. (*Ibid.*) Neither the felony-murder rule nor the natural and probable consequences doctrine factored into their arguments. (*Id.* at pp. 32-35.) Supporters raised mens rea only to assure voters that an accused who was not the actual killer could *not* receive a sentence of death or life without parole absent intent to aid in the commission of the murder. (*Id.* at p. 35; Prop. 7, § 6.) S.B. 1437 doesn't change that punishment.

Nor does Penal Code section 1170.95 amend the statutory provisions enacted by Proposition 7. Penal Code section 1170.95 creates a procedure for vacating a murder conviction when the person convicted of murder didn't personally kill anyone, act with the intent to kill, or participate in a felony with reckless indifference to human life. (Pen. Code, § 1170.95, subd. (d)(2).) The Legislature's concern was not that murderers are, or had been, sentenced too harshly; rather, it was that those who don't meet the mens rea requirements set forth in Penal Code sections 188 and 189 should not be, or should not have been, convicted of murder, regardless the specifics of the punishment. (See Stats. 2018, ch. 1015, § 1, subd. (e) [discussing "culpability of the individual"].) We therefore conclude Penal Code section 1170.95 does not amend Proposition 7.

The district attorney argues Proposition 7 incorporated by reference the elements of first and second degree murder as defined at the time the voters enacted it. "It is unambiguous that Proposition 7 set the penalties for murder which may not be changed by the Legislature unilaterally. The amendments to Penal Code sections 188 and 189 effectively change the penalties for murder by changing who may be prosecuted for murder as defined in 1978. The Legislature cannot do indirectly [what] it may not do directly." They also argue the addition of Penal Code section 1170.95 to create a petitioning process to vacate prior convictions violates the same principles. "[W]hen the voters passed Proposition 7, they specifically intended to increase the penalty for defendants convicted of either first or second degree murder as it was then defined."

18

As the *Gooden* court points out, whether a statutory reference incorporates a provision as it existed when the referring statute was enacted depends on whether the reference is specific or general. "[W]here the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time." (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 59; see also *People v. Hernandez* (2003) 30 Cal.4th 835, 865 [Because the statute setting the punishment for conspiracy to commit murder "refers generally to the punishment prescribed for murder in the first degree, it incorporates whatever punishment the law prescribed for first degree murder when the conspiracy was committed"].) So here, where Proposition 7 referred generally to murder in the first degree and murder in the second degree, the initiative incorporated changes to the definition of those crimes that occur from time to time, rather than incorporating the definition of murder in 1978 and freezing it in time. (*Gooden*, *supra*, 42 Cal.App.5th at pp. 282-283.)

In short, as the *Gooden* court held, "Senate Bill 1437 presents a classic example of legislation that addresses a subject related to, but distinct from, an area addressed by an initiative." (*Gooden*, *supra*, 42 Cal.App.5th at p. 282.) "The Legislature is free to enact such legislation without voter approval." (*Ibid.*) We conclude the trial court erred by holding otherwise.

C. *S.B. 1437 Did Not Amend Proposition 115*

Although Proposition 115, unlike Proposition 7, amended the definition of murder, we nevertheless conclude S.B. 1437 did not amend Proposition 115. As we discussed above, the key portions of Proposition 115 at issue are those that added to Penal Code section 189 kidnapping, train wrecking, sodomy, oral copulation, and forcible sexual penetration to the list of predicate felonies for first degree murder. (Prop. 115, § 9.) Since S.B. 1437 also changed the circumstances under which an accused may be convicted for murder, the two enactments do address related subject matter. However, that doesn't end the analysis. The question "we must ask ourselves is whether Senate Bill 1437 addresses a matter that the initiative specifically authorizes or prohibits." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287.)

The Fourth District, Division One concluded it does not, and we agree. "Senate Bill 1437 did not augment or restrict the list of predicate felonies on which felony murder may be based, which is the pertinent subject matter of Proposition 115. It did not address any other conduct which might give rise to a conviction for murder. Instead, it amended the mental state necessary for a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287.)

It doesn't matter that Proposition 115 included the entire text of Penal Code section 189, including the unchanged provisions defining the offense. The California Constitution required the inclusion of the unchanged language. (See Cal. Const., art. IV,

20

§ 9; *County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 206 ["a statute must be reenacted in full as amended if any part of it is amended"].) Technical reenactment of this sort doesn't prevent the Legislature from amending portions of a reenacted section that are not "integral to accomplishing the electorate's goals in enacting the initiative" unless there are "other indicia . . . that voters reasonably intended to limit the Legislature's ability to amend that part of the statute." (*County of San Diego*, at p. 214) "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process." (*Ibid.*)

That is precisely the situation here. Proposition 115 "restates a statutory provision in full ([Pen. Code,] § 189) to comply with constitutional mandates. Further, . . . there are no indicia in the language of the initiative or its ballot materials indicating the voters intended to address any provision of [Penal Code] section 189, except the list of predicate felonies for purposes of the felony-murder rule. Therefore, we conclude the limiting language in Proposition 115 . . . does not preclude the Legislature from amending provisions of the reenacted statute that were subject to technical restatement to ensure compliance with article IV, section 9 of the California Constitution." (*Gooden*, *supra*, 42 Cal.App.5th at p. 288.)

For all these reasons and the additional reasons set out in *Gooden*, we conclude S.B. 1437 did not amend Proposition 7 or Proposition 115. "[T]he voters who approved

21

Proposition 7 and Proposition 115 got, and still have, precisely what they enacted—stronger sentences for persons convicted of murder and first degree felony-murder liability for deaths occurring during the commission or attempted commission of specified felony offenses." (*Gooden*, *supra*, 42 Cal.App.5th at p. 289.)

D. *Section 1170.95 Does Not Violate Separation of Powers Principles*

The district attorney argues section 1170.95 violates the separation of powers doctrine by encroaching upon a core function of the judiciary in resolving specific controversies between parties. The Fourth District, Division One rejected this argument in *Lamoureux*, *supra*, 42 Cal.App.5th at pp. 257-264. We find their comprehensive analysis persuasive.

The California Constitution divides power among three coequal government branches—the Legislature (Cal. Const., art. IV, § 1), the executive (Cal. Const., art. V, § 1), and the judiciary (Cal. Const., art. VI, § 1). (*People v. Bunn* (2002) 27 Cal.4th 1, 14 (*Bunn*); *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1102.) It vests each branch with certain essential or core functions that "may not be usurped by another branch." (*Bunn*, at p. 14) "Protection of those core functions is guarded by the separation of powers doctrine and is embodied in a constitutional provision, which states that one branch of state government may not exercise the powers belonging to another branch." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 176-177 (*Roe 1*); Cal. Const., art. III, § 3.) This separation of powers notwithstanding, "it is well understood that the branches share common boundaries [citation], and no sharp line between their operations exists." (*Bunn*, at p. 14.)

"A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy. A core function of the judiciary is to resolve specific controversies between parties." (*Roe 1*, *supra*, 146 Cal.App.4th at p. 177.) In performing this function, "courts interpret and apply existing laws." (*Ibid.*)

In their separation of powers argument, the district attorney relies primarily on the Supreme Court's companion cases *Bunn* and *People v. King* (2002) 27 Cal.4th 29 (*King*), which adopted the federal separation of powers analysis of *Plaut v. Spendthrift Farm, Inc.* (1995) 514 U.S. 211. (*Bunn*, *supra*, 27 Cal.4th at pp. 5, 22-23; *King*, at p. 31.) At bottom, the district attorney's argument is that *Bunn* and *King* teach that a final judgment may never be reopened or vacated unless legislation authorizing such reconsideration was in effect before the judgment became final.

We agree with *Lamoureux* that such a broad interpretation isn't supported. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 260.) *Bunn* and *King* announced a narrow rule of law applicable to statutes of limitation: "If a criminal complaint is dismissed because the statute of limitations has run, and the Legislature later retroactively expands the statute of limitations before that ruling becomes final, then the new limitations period will apply. If the Legislature changes the limitations period after the time for appeal has expired or the ruling has completed its journey through the entire appellate process, however, the Legislature's attempt to revive the criminal action violates the separation of powers doctrine." (*Roe 1*, *supra*, 146 Cal.App.4th at p. 177; *Bunn*, *supra*, 27 Cal.4th at

p. 5; *King*, *supra*, 27 Cal.4th at p. 31.) As the Supreme Court explained in *King*, *Bunn* held "separation of powers principles preclude retroactive application of *refiling legislation* in cases where the prior judgment of dismissal was entered or finally upheld before the legislation took effect." (*King*, at p. 31, italics added.) Thus, legislation violates the separation of powers doctrine if it retroactively expands a statute of limitations to render timely charges that were previously dismissed as untimely.

S.B. 1437 doesn't qualify as refiling legislation. It restricts the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine. And it allows people who were previously convicted of murder under those theories to petition the court to have their convictions vacated. Not only does S.B. 1437 not involve the expansion of a statute of limitations (or a statute of limitations at all), it has the opposite effect of refiling legislation; it reduces the number of people who can be liable for murder by restricting the scope of conduct for which a person can be convicted. Because S.B 1437 doesn't constitute and isn't similar to refiling legislation, the separation of powers principles announced in *Bunn* and *King* simply don't apply.

We agree with the *Lamoureux* court that there's no reason to expand those separation of powers principles to reach final judgments of conviction. (*Lamoureux*, *supra*, 42 Cal.App.5th 241, pp. 260-261.) The district attorney has not directed us to any authority "applying the *Bunn* and *King* separation of powers analysis to bar legislation allowing the reopening of already-final judgments of *conviction* (as distinct from already-

24

final judgments of *dismissal*), and [like *Lamoureux*] we have found none." (*Lamoureux*, at p. 261.) And doing so would threaten the "substantial precedent [of] remedial legislation authorizing the ameliorative reopening of final judgments of conviction to benefit criminal defendants." (*Id*. at p. 262.) *Lamoureux* describes the legislation that would be affected at length, and we need not repeat it here. (*Id.* at pp. 262-263.) Suffice to say, the effects would be substantial.

We therefore conclude S.B. 1437 does not violate the separation of powers doctrine.

E. *Section 1170.95 Does Not Violate Marsy's Law*

The district attorney argues S.B. 1437 violates victims' rights to finality of judgments, as protected in Marsy's Law, which the voters passed by initiative as Proposition 9. (Ballot Pamp., Gen. Elec. (Nov. 4, 2008) text of Prop. 9 (Proposition 9).) In addition, they argue S.B. 1437 violates Marsy's Law by depriving victims of their right to safety. *Lamoureux* rejected these arguments, and we agree with its reasoning and analysis.

Marsy's Law strengthened "'a broad spectrum of victims' rights'" by amending the California Constitution and adding provisions to the Penal Code. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 264.) The initiative added numerous specific victims' rights to the Constitution, including (relevant here) the rights "[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings" and "[t]o have the safety of the victim, the victim's family, and the general public considered before any

25

parole or other post-judgment release decision is made." (Cal. Const., art. I, § 28, subds. (b)(9), (b)(16).) Marsy's Law cannot be amended except by ballot initiative or by vote of a two-thirds majority in both houses of the Legislature. (Ballot Pamp., Gen. Elec. (Nov. 4, 2008) (2008 Ballot Pamphlet) text of Prop. 9, § 9, p. 132.)

To promote finality, Marsy's Law "substantially amended Penal Code provisions pertaining to parole." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 264; 2008 Ballot Pamphlet, *supra*, text of Prop. 9, §§ 5.1-5.3 at pp. 130-132, amending Pen. Code, §§ 3041.5, 3043, 3044.) But Marsy's Law "did not foreclose postjudgment proceedings altogether." (*Lamoureux*, at p. 264.) Instead, it "expressly contemplated the availability of such postjudgment proceedings," by referring to "'parole [and] other post-conviction release proceedings,'" and to "'post-conviction release decisions,'" in general. (*Id*. at pp. 264-265; see also Cal. Const., art. I, § 28, subds. (b)(7) & (8).)

The district attorney argues S.B. 1437 violates this right to finality "by granting new and substantial privileges to revisit murder convictions and sentences, whether by trial or plea, for reasons wholly independent of the lawfulness of the convictions." If this argument were sound, it would follow that Marsy's Law prohibits the Legislature from creating *any* new postjudgment criminal proceedings absent a two-thirds majority vote in each house of the legislature. But the district attorney doesn't explain how such a sweeping prohibition can be derived from the right to finality. Instead, they quote the initiative, selectively focusing on words related to finality.

26

Although we recognize we should, as a general matter, afford Marsy's Law "a broad interpretation protective of victims' rights" (*Santos v. Brown* (2015) 238 Cal.App.4th 398, 418), we decline to interpret the law so broadly to find that voters intended to impede the Legislature from creating new postjudgment proceedings. "It would be anomalous and untenable for us to conclude, as the People impliedly suggest, that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a 'prompt and final conclusion' of criminal cases." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 265.)

The district attorney also argues the resentencing procedure in Penal Code section 1170.95 doesn't "honor[] the victims' right" to safety. Even assuming the disposition of a Penal Code section 1170.95 petition is a postjudgment release decision, if the trial court concludes a petitioner is entitled to have their murder conviction vacated and the sentence recalled, it must then "resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (Pen. Code, § 1170.95, subd. (d)(1).) In such resentencing, "the court may weigh the same sentencing factors it considers when it initially sentences a defendant, including whether the defendant presents 'a serious danger to society' and '[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed.'" (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 266; Cal. Rules of Court, rule 4.421(b)(1), (c).) We agree

with the Fourth District, Division One that "[a]t minimum, the trial court's ability to consider these factors during resentencing ensures the safety of the victim, the victim's family, and the general public are 'considered' as required by Marsy's Law." (*Lamoureux*, at p. 266.)

We therefore conclude Penal Code section 1170.95 does not violate Marsy's Law.

## III

## DISPOSITION

We reverse the judgment of the trial court and remand for further proceedings under Penal Code section 1170.95.

CERTIFIED FOR PUBLICATION

SLOUGH           
Acting P.J.

We concur:


FIELDS         
          J.


MENETREZ      
          J.