Filed 11/30/20  P. v. Rocha CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C090198 |
| Plaintiff and Respondent, | (Super. Ct. No. F3428A) |
| v. | |
| DANIEL MAURICE LESSIUE ROCHA, | |
| Defendant and Appellant. | |

In 2007, defendant Daniel Maurice Rocha was convicted of first degree murder. In 2019, defendant filed a petition for resentencing under newly enacted Penal Code[1] section 1170.95, which was enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill No. 1437).

The trial court denied defendant's petition on the basis that Senate Bill No. 1437 unconstitutionally amended Proposition 115 (Prop. 115, as approved by voters, Primary

---

[1]  Further undesignated statutory references are to the Penal Code.

Elec. (June 5, 1990)) and Proposition 7 (Gen. Elec. (Nov. 7, 1978) text of Prop. 7) and violated Marsy's Law.  On appeal, defendant argues the trial court should have reached the merits of his petition because Senate Bill No. 1437 is constitutional.

Consistent with our recent decision, *People v. Superior Court (Ferraro)* (2020) 51 Cal.App.5th 896 (*Ferraro*), and the unanimous conclusion of other appellate courts that have addressed the issue, we conclude Senate Bill No. 1437 is not an invalid amendment of either Proposition 7 or Proposition 115, and did not violate the separation of powers doctrine, or the provisions of the Victims' Bill of Rights Act of 2008, also known as Marsy's Law (Prop. 9, as approved by voters, Gen. Elec. (Nov. 4, 2008).  (See, e.g., *People v. Bucio* (2020) 48 Cal.App.5th 300 (*Bucio*); *People v. Cruz* (2020) 46 Cal.App.5th 740 (*Cruz*); *People v. Solis* (2020) 46 Cal.App.5th 762 (*Solis*); *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*); *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270 (*Gooden*); *People v. Johns* (2020) 50 Cal.App.5th 46 (*Johns*).)  We reverse the trial court's order and remand for further proceedings.

PROCEDURAL AND FACTUAL BACKGROUND

Defendant and another man broke into a home and shot and killed one of the residents.  Following a jury trial, defendant was convicted of first degree murder.  We affirmed the conviction, and the judgment became final in 2010.

In 2019, defendant filed a petition for resentencing under newly enacted section 1170.95.  The district attorney opposed the petition, arguing Senate Bill No. 1437, and, consequently, section 1170.95, was unconstitutional.  In particular, the district attorney argued Senate Bill No. 1437 unconstitutionally amended Proposition 7 and Proposition 115, and violated the separation of powers doctrine and Marsy's Law. Defendant filed opposition arguing Senate Bill No. 1437 was constitutional and the trial court should resolve the petition on the merits. After considering the briefs of the parties and oral argument, the trial court concluded Senate Bill No 1437 did not violate Marsy's Law, but was unconstitutional as a violation of separation of powers, and improperly

2

amended both Propositions 7 and 115.  Accordingly, the trial court denied defendant's section 1170.95 petition.

## DISCUSSION

The district attorney argues Senate Bill No. 1437 is unconstitutional because it (1) unlawfully amended Propositions 7 and 115; (2) violates the separation of powers doctrine; and (3) violates Marsy's Law.  We recently addressed, and rejected, virtually identical claims regarding amending Propositions 7 and 115.  (*Ferraro*, *supra*, 51 Cal.App.5th at p. 896.)  Moreover, as to each of the additional issues raised in this appeal, virtually identical issues, arguments, and authorities have been raised and unanimously rejected by numerous appellate districts.  (See, e.g., *Gooden*, *supra*, 42 Cal.App.5th at p. 270; *Lamoureux*, *supra*, 42 Cal.App.5th at p. 241; *Johns*, *supra*, 50 Cal.App.5th at pp. 69-70; *Bucio*, *supra*, 48 Cal.App.5th at p. 300.)  We agree fully with *Ferraro*, *Bucio*, *Gooden*, *Johns*, and *Lamoureux* and adopt their analyses here.  We briefly outline their core holdings, which apply fully here.[2]

"We review de novo questions of statutory construction and the determination of a statute's constitutionality."  (*Stennett v. Miller* (2019) 34 Cal.App.5th 284, 290; *People v. Armogeda* (2015) 233 Cal.App.4th 428, 435.)  We begin " 'with the presumption that the Legislature acted within its authority.' "  (*People v. DeLeon* (2017) 3 Cal.5th 640, 651.)  "[O]ne of the fundamental principles of our constitutional system of government is that a statute, once duly enacted, 'is presumed to be constitutional.  Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity.' "  (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086.)  " 'Unless conflict with a

---

[2]     The district attorney requests we take judicial notice of our records in the prior appeal of this case, *People v. Rocha* C057538/C057715, September 1, 2009, and that nonpublished opinion, the ballot materials for Proposition 7 and Proposition 115, and legislative history materials of Senate Bill No. 1437.  We deny the request.  (*People v. Perskie* (1977) 70 Cal.App.3d 486, 493.)

provision of the state or federal Constitution is clear and unquestionable, we must uphold the [statute].' " (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252.)

Effective January 1, 2019, Senate Bill No. 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending section 188, which defines malice, to add a requirement that all principals to a murder must act with express or implied malice to be convicted of that crime. (Stats. 2018, ch. 1015, § 2.) It also amended section 189, which defines the degrees of murder, by adding a condition to the felony-murder rule. Thus, in order to be convicted of felony murder, a defendant who was neither the actual killer nor a direct aider and abettor to the murder must have been a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3; see *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

As relevant here, Senate Bill No. 1437 also established a procedure for the defendants previously convicted of murder to seek resentencing if they believe they could not currently be convicted of that crime under the newly amended provisions of sections 188 and 189. (Senate Bill No. 1437, § 4 [enacting newly codified § 1170.95].) Section 1170.95 thereby allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ." (§ 1170.95, subd. (a).)

I

*Propositions 7 And 115*

Proposition 7 "was approved by voters in a statewide election in November 1978. The statutory changes it made can be grouped into two categories: (1) it increased the

4

penalties for first and second degree murder by amending section 190 [citation]; and (2) it sought to strengthen and expand California's death penalty with amendments to sections 190.1 through 190.5 [citation]. [¶] Prior to the passage of Proposition 7, a first degree murder conviction was punishable by life imprisonment with the possibility of parole after seven years. A defendant convicted of second degree murder could be sentenced to five, six, or seven years in prison. Proposition 7 increased the punishment for first degree murder to life imprisonment with the possibility of parole after 25 years, and the penalty for second degree murder was increased to life imprisonment with the possibility of parole after 15 years." (*Cruz, supra*, 46 Cal.App.5th at pp. 753-754.)

Proposition 115 "made several changes to criminal law and procedure when passed by voters in 1990. [Citation.] Pertinent here is its amendment to section 189, wherein it added five more serious felonies (kidnapping, train wrecking, and three sex offenses [§§ 286, 288a, 289]) to the list of felonies for first degree felony-murder liability. [Citation.] The 'Analysis by the Legislative Analyst' informed voters that among the 'numerous significant and complex changes' Proposition 115 would make to criminal law, it would expand 'the definition of first-degree murder to include murder committed during the commission or attempted commission of additional serious crimes.' " (*Cruz, supra*, 46 Cal.App.5th at p. 759.)

Proposition 115 also " 'revised the scope of capital liability for aiding and abetting felony murders' by amending section 190.2 to indicate that for first degree felony murder ' "every person, not the actual killer, who, with reckless indifference to human life and as a major participant' " aids or abets the crime may be convicted of special circumstance murder." (*Cruz, supra*, 46 Cal.App.5th at p. 759.)

Article II, section 10, subdivision (c) of the California Constitution prohibits the Legislature from amending a statute enacted through voter initiative without "approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval." (*People v. Cooper* (2002) 27 Cal.4th 38, 44.) "[A]n amendment [is] 'a

5

legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.' " (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 571.) Even so, not all new legislation that "concerns the same subject matter as an initiative" is necessarily an amendment. (*Ibid*.) "[T]he Legislature remains free to enact laws addressing the general subject matter of an initiative, or a 'related but distinct area' of law that an initiative measure 'does not specifically authorize *or* prohibit.' " (*People v. Kelly* (2010) 47 Cal.4th 1008, 1026, fn. 19; accord, *Pearson*, at p. 571.) "This is the principle that guides the outcome in this proceeding. As the appellate court in *Gooden* explained, 'Senate Bill 1437 presents a classic example of legislation that addresses a subject related to, but distinct from, an area addressed by an initiative.' (*Gooden*, *supra*, 42 Cal.App.5th at p. 282; accord *Cruz*, *supra*, 46 Cal.App.5th at p. 756.) Senate Bill 1437 does not alter the punishment for murder, but the offense." (*Ferraro*, *supra*, 51 Cal.App.5th at pp. 910-911.)

Senate Bill No. 1437 did not amend Proposition 7 because it did not "address the same subject matter." (*Gooden*, *supra*, 42 Cal.App.5th at p. 282.) Senate Bill No. 1437 does not speak to the penalties for murder; rather, it amends the mental state required for murder. The definition of a criminal offense is a distinct concept from the punishment for that offense. (*Ferraro*, *supra*, 51 Cal.App.5th at p. 911.) While the changes introduced by Proposition 7 "increased the punishment for murder" by amending section 190, Senate Bill No. 1437 "neither sets nor prohibits a punishment for any type of murder. The punishment applicable to a murder conviction remains the same." (*Ferraro*, at pp. 909, 911; see also *Cruz*, *supra*, 46 Cal.App.5th p. 754.) That is, Senate Bill No. 1437 does not prohibit what Proposition 7 authorizes, nor does it authorize what Proposition 7 prohibits. (*Gooden*, at p. 282, citing *Appendix v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435]; *Ferraro*, at p. 911.)

Neither does Proposition 7 prevent any amendment of sections 187, 188, or 189. (*Ferraro*, *supra*, 51 Cal.App.5th at pp. 912-914.) The language of Proposition 7 refers

6

generally to "persons found guilty of first degree and second degree murder"; it does not make "specific reference to the provisions of sections 187, 188, or 189." (*Ferraro*, at p. 912.) "A reference to persons found guilty of first degree and second degree murder is not a specific reference to the provisions of sections 187, 188, or 189 but a general reference to a body of laws. (*Gooden*, *supra*, 42 Cal.App.5th at pp. 282-284.)" (*Ferraro*, at p. 912.) "[T]he concepts of first and second degree murder are broader than sections 187 through 189 and even statutory law in general. Thus, a reference to persons found guilty of first degree and second degree murder is a general reference and includes any later changes to the law." (*Ferraro*, at p. 912.)

As it did with respect to Proposition 7, "the Legislature has acted in an area related, but distinct from the one addressed in Proposition 115." (*Ferraro*, *supra*, 51 Cal.App.5th at p. 916.) "Proposition 115 amended section 189 to add select crimes to the list of predicate offenses for first degree felony-murder liability." (*Bucio*, *supra*, 48 Cal.App.5th at p. 311.) Senate Bill No. 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based. Rather, it amended the mental state necessary for murder, which is 'a distinct topic not addressed by Proposition 115's text or ballot materials.' (*Gooden*, at p. 287.)" (*Bucio*, at p. 312; see also *Cruz*, *supra*, 46 Cal.App.5th at p. 760 ["While the Legislature cannot remove Proposition 115's five felonies from the list for first degree felony-murder liability, it can limit liability for accomplices under the felony-murder rule"].) The Legislature is not prohibited from addressing accomplice liability for felony murder in Senate Bill No. 1437 merely because accomplice liability in capital cases was addressed in Proposition 115. (*Cruz*, at pp. 759-760.) Senate Bill No. 1437's limitations on accomplice liability "in section 189 is an area of law related to but distinct from accomplice liability in special circumstance murder in section 190.2" and "Senate Bill 1437 did not improperly amend Proposition 115 by adding such restrictions to felony murder in section 189." (*Cruz*, at p. 760.)

7

"[T]he Legislature's enactment of Senate Bill 1437 has not undone what the voters accomplished with Proposition 7 or Proposition 115 and therefore the legislation does not violate the [C]onstitution.  Senate Bill 1437 addresses the elements of murder, an area related to but distinct from the penalty for murder set by voters in Proposition 7.  Nothing in the language of Proposition 7 nor its ballot materials evidences an intent by the voters to prohibit the Legislature from refining the elements of murder, namely limiting accomplice liability under the natural and probable consequences doctrine or felony-murder rule.  Nor did the voters so limit the Legislature with the passage of Proposition 115." (*Cruz*, *supra*, 46 Cal.App.5th at p. 747; cf. *People v. Powell* (2018) 5 Cal.5th 921, 943 [the power to define crimes is vested in the Legislature].)

Senate Bill No. 1437 does not authorize anything prohibited by Propositions 7 or 115, nor prohibit anything authorized by the voters in these two initiatives.  (*Solis*, *supra*, 46 Cal.App.5th at p. 769.)  After reviewing the text and ballot materials for Proposition 7 and Proposition 115, we joined the other appellate courts that have addressed this issue and concluded "that Senate Bill 1437 is not an invalid amendment of either Proposition 7 or 115 because the legislation did not add to or take away from any provision in either initiative." (*Ferraro*, *supra*, 51 Cal.App.5th at p. 902, citing *Bucio*, *supra*, 48 Cal.App.5th at pp. 311-312; *Cruz*, *supra*, 46 Cal.App.5th at p. 747; *Solis*, at p. 769; *Lamoureux*, *supra*, 42 Cal.App.5th at p. 251; *Gooden*, *supra*, 42 Cal.App.5th at p. 275.) The district attorney offers nothing to persuade us to change these conclusions.

II

*Separation Of Powers*

The district attorney also argues section 1170.95 impairs a core function of the judiciary because it provides for the retroactive reopening of final judgments. Specifically, the district attorney argues by failing to distinguish between prisoners serving final and nonfinal sentences, and permitting prisoners serving final sentences to seek relief, the Legislature impaired the judiciary's core function of resolving

8

controversies between parties. This argument was rejected in *Bucio* and *Lamoureux*. We agree with the analysis on this point as well.

" 'The California Constitution establishes a system of state government in which power is divided among three coequal branches (Cal. Const., art. IV, § 1 [legislative power]; Cal. Const., art. V, § 1 [executive power]; Cal. Const., art. VI, § 1 [judicial power]), and further states that those charged with the exercise of one power may not exercise any other (Cal. Const., art. III, § 3).' (*People v. Bunn* (2002) 27 Cal.4th 1, 14 . . . (*Bunn*).)" (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 252.) Each branch is vested "with certain essential or core functions that 'may not be usurped by another branch.' (*Bunn*, at p. 14) 'Protection of those core functions is guarded by the separation of powers doctrine and is embodied in a constitutional provision, which states that one branch of state government may not exercise the powers belonging to another branch.' (*Perez v. Roe* 1 (2006) 146 Cal.App.4th 171, 176-177 . . . ; Cal. Const., art. III, § 3.)" (*Johns*, *supra*, 50 Cal.App.5th at p. 66.)

A determination of whether one branch of government has misappropriated a core or essential function of another requires we consider the pertinent roles of the branches at issue. " 'A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy.' " (*Johns*, *supra*, 50 Cal.App.5th at p. 66). Encompassed within that core function is the responsibility of defining crimes and prescribing punishments. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 252) " 'A core function of the judiciary is to resolve specific controversies between parties.' [Citation.] In performing this function, 'courts interpret and apply existing laws.' " (*Johns*, at pp. 66-67.) "The function of resolving specific controversies between parties includes the power to dispose of criminal charges filed by and on behalf of the People." (*Lamoureux*, at p. 253.) Because the powers of the branches are interrelated and interdependent, the actions of one may significantly affect those of another. Accordingly, separation of powers is violated only " 'when the actions of a branch of

9

government defeat or materially impair the inherent functions of another branch.' " (*Ibid.*)

The district attorney is correct that under section 1170.95, petitioners may obtain relief irrespective of whether their murder convictions were final as of January 1, 2019. (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 257.)  But the bill does not intrude on a core function of the judiciary by allowing prisoners serving final sentences to seek relief. "[W]here legislation reopening a final judgment of conviction is no 'risk to individual liberty interests' and provides 'potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution,' such legislation is permissible.  ([*Lamoureux*, *supra*, at p. 261] [citing to several cases recognizing that reopening of final judgments do not violate the separation of powers]; compare *ibid.* with *People v. Bunn* (2002) 27 Cal.4th 1 . . . and *People v. King* (2002) 27 Cal.4th 29 . . . [where legislation authorized the refiling of charges against a previously acquitted defendant].)" (*Bucio*, *supra*, 48 Cal.App.5th at p. 314.)  Thus, to the extent retroactive reopening of final judgments implicates individual liberty interests, section 1170.95 does not present any risk to those interests.  (*Lamoureux*, at p. 261.)  "On the contrary, it provides potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution," the criminal defendant.  (*Ibid*.)  Also, the legal landscape is rife with legislation allowing petitioners to reopen final judgments of conviction without regard to their finality as of the effective date of the legislation, for example, Propositions 36 and 47.  (*Lamoureux*, at pp. 262-263.)  The " 'prevalence of such legislation . . . confirms there is nothing especially unique about section 1170.95, which appears . . . to constitute a legitimate and ordinary exercise of legislative authority.'  (*Lamoureux*, at p. 263.)" (*Bucio*, at p. 314; see also *Johns*, *supra*, 50 Cal.App.5th at p. 68.)

III

10

*Marsy's Law*

The district attorney contends the resentencing provisions of Senate Bill No. 1437 directly conflict with Marsy's Law. The district attorney argues Senate Bill No. 1437 violates victims' rights to finality of judgments, as protected in Marsy's Law, and deprives victims of their right to safety by failing " 'to have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made.' "

"Marsy's Law strengthened 'a "broad spectrum of victims' rights" ' by amending the California Constitution and adding provisions to the Penal Code. [Citation.] The initiative added numerous specific victims' rights to the Constitution, including (relevant here) the rights '[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings' and '[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made.' (Cal. Const., art. I, § 28, subd. (b)(9), (b)(16).)" (*Johns*, *supra*, 50 Cal.App.5th at p. 68.) Article I, section 28, subdivision (a)(6) of the California Constitution provides that " '[v]ictims of crime are entitled to finality in their criminal cases. Lengthy appeals and other [postjudgment] proceedings that challenge criminal convictions . . . and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated. This prolonged suffering . . . must come to an end." (*Bucio*, *supra*, 48 Cal.App.5th at pp. 312-313.) To promote finality, Marsy's Law "substantially amended Penal Code provisions pertaining to parole." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 264; see Voter Information Guide, Gen. Elec., *supra*, text of Prop. 9, §§ 5.1-5.3, pp. 130-132, amending Pen. Code, §§ 3041.5, 3043, 3044.) However, Marsy's Law "did not foreclose post-judgment proceedings altogether." (*Lamoureux*, at p. 264.) Instead, it "expressly contemplated the availability of such postjudgment proceedings," by referring to " 'parole [and] other post-conviction release proceedings,' "

11

and to " 'post-conviction release decision[s],' " in general. (*Id.* at pp. 264-265; see Cal. Const., art. I, § 28, subd. (b)(7) & (8).)

The *Bucio, Lamoureux* and *Johns* courts also addressed and rejected the additional claim that section 1170.95 conflicts with the victims' rights provisions of "Marsy's Law." (Cal. Const, art. I, § 28, subd. (a)(6).) (*Bucio, supra*, 48 Cal.App.5th at p. 312; *Lamoureux, supra*, 42 Cal.App.5th at pp. 264-265; *Johns, supra*, 50 Cal.App.5th at pp. 68-69.) We agree with the reasoning and analysis in those cases.

Marsy's Law established a victim's right to prompt and final conclusion to postjudgment proceedings; it did not foreclose postjudgment proceedings altogether. (*Lamoureux, supra*, 42 Cal.App.5th at p. 265.) "Although we recognize we should, as a general matter, afford Marsy's Law 'a broad interpretation protective of victims' rights' [citation], we decline to interpret the law so broadly to find that voters intended to impede the Legislature from creating new postjudgment proceedings." (*Johns, supra*, 50 Cal.App.5th at p. 69.) "It would be anomalous and untenable for us to conclude, as the [district attorney] impliedly suggest[s], that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a 'prompt and final conclusion' of criminal cases." (*Lamoureux*, at p. 265.)

Nor does Senate Bill No. 1437 deprive victims of safety-related rights because trial courts may consider that factor when resentencing the defendant on any remaining counts. (*Lamoureux, supra*, 42 Cal.App.5th at pp. 265-266.) Even assuming the disposition of resentencing petition under Senate Bill No. 1437 is a postjudgment release decision, if the trial court concludes a petitioner is entitled to have his or her murder conviction vacated and the sentence recalled, it must "then resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) Upon resentencing, the court may weigh the same sentencing factors it considers when initially sentencing a defendant, including whether the defendant presents ' "a serious danger to society" and "[a]ny other

12

factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed." [Citation.]' (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 266; see Cal. Rules of Court, rule 4.421(b)(1), (c).) The trial court's ability to consider these factors 'ensures the safety of the victim, the victim's family, and the general public are "considered," as required by Marsy's Law.' (*Ibid.*)" (*Bucio*, *supra*, 48 Cal.App.5th at p. 313; see also *Johns*, *supra*, 50 Cal.App.5th at p. 69.)

In the end, the arguments advanced by the district attorney in this case are identical to those that have been rejected in *Ferraro, Bucio*, *Cruz, Solis, Lamoureux, Gooden,* and *Johns*. The district attorney has offered nothing to convince us those decisions are incorrect, and we see no reason to depart their analyses and conclusion that Senate Bill No. 1437 is constitutional. Therefore, we conclude the trial court erred by denying defendant's section 1170.95 petition.

DISPOSITION

The order denying defendant's petition for resentencing is reversed and the matter is remanded for further proceedings under section 1170.95. We express no opinion how the court should rule at those proceedings.


/s/
Robie, J.

We concur:


/s/
Raye, P. J.


/s/
Hull, J.

13